79 N.J. Super. 315 (1963)
191 A.2d 495
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HOWARD GIBBS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1963.
Decided May 31, 1963.
*318 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. William E. Reifsteck, assigned counsel, argued the cause for appellant.
Mr. Stephen M. Gretzkowski, Jr., Assistant Prosecutor, argued the cause for respondent (Mr. Norman Heine, Camden County Prosecutor, attorney; Mr. Gretzkowski, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The Camden County grand jury returned three indictments against defendant, respectively *319 charging him with (1) assault with intent to commit rape (N.J.S. 2A:90-2); (2) kidnaping (N.J.S. 2A:118-1), and (3) armed robbery (N.J.S. 2A:141-1 and 2A:151-5). He pleaded not guilty. The jury returned a verdict of guilty on all three charges. The County Court judge imposed the following State Prison sentences: (1) 10-12 years on the assault with intent to rape charge, to run consecutive to a State Prison sentence then being served for armed robbery; (2) 30-35 years for the crime of kidnaping, to run consecutive to the assault with intent to rape sentence, and (3) 12-15 years for robbery, and an additional 3-5 years for being armed, these sentences to run consecutive to the kidnaping sentence.
Defendant appeals his convictions. Assigned counsel on appeal is the same attorney who represented him at the trial.

I.
Preliminarily, we dispose of defendant's claim, made in a letter to counsel, that the appeal brief is "conspicuously weak and insufficient" because it did not present "the circumstances and development of the alleged crimes and my arrest" or "the facts of the contradiction in the testimony of the alleged offended party under oath." He also complains of counsel's failure to include in the typed appendix any portion of the transcript of the trial. We have been provided with and have carefully read the full transcript, and have assessed the points raised on appeal in the light of the trial record. We find that assigned counsel has presented every argument which might properly be raised. He has ably discharged his responsibility, both in this court and on the trial level. Defendant's complaint about the quality of his legal representation is without foundation.

II.
In the early evening of January 27, 1960, one B and his bride-to-be, Miss G, were sitting in B's automobile in the Evans Lake parking area, Haddonfield, N.J. Shortly after *320 8 P.M. defendant, then going on 20, accompanied by three male juveniles, drove up to the area in a stolen Oldsmobile car. The four had been drinking wine. Defendant first tried to push the parked car into the water, but was unsuccessful. He then jumped out of the Oldsmobile, ran up to the parked car, knocked with a gun against the window where Miss G was sitting, and told the two to get out of the car or he would shoot. In fear, they complied with the order. Meanwhile, another of the quartet left the Oldsmobile and stood some three or four feet in front of B's car. Defendant told the couple that all he wanted was their money and the keys to the car, and that nothing would happen to them. He took Miss G's pocketbook and B's wallet and keys, returned to the Oldsmobile, but then came back and told the girl they were going to take her with them and leave her at the bridge close by. When Miss G resisted, defendant grabbed her arm, pulled her toward the Oldsmobile and pushed her into the front seat. He then drove the Oldsmobile toward the bridge, but did not stop there, continuing for some distance to an isolated place in a neighboring township, where he stopped. Gun in hand, he ordered the girl to take off her clothes. When she refused, defendant, assisted by one of the juveniles, stripped her, leaving her standing in her sneakers. He ordered the two boys in the back seat of the Oldsmobile to get out and forced the girl to get in, accomplishing his purpose by striking her on the neck and on the jaw. He then attempted to have sexual relations with her, assisted by one of his three companions. Miss G's struggles were evidenced by the bruises and scratches on her body. She could not recall whether he penetrated her, and this would explain the fact that the State charged defendant with only an attempt to commit rape. One of the boys who had been sitting in the front seat also attempted sexual relations, but apparently failed of his purpose. Defendant then handed the young lady her pocketbook and some of her clothing and ordered her to run into the field, saying "better not turn around or we will shoot you." She ran off naked, and the four men drove away. Miss G eventually got to a *321 highway where she was picked up by people in a passing car, who took her to the police.
The three younger members of the quartet were dealt with as juveniles; defendant stood trial. B and Miss G positively identified him as the driver of the Oldsmobile and the man who held the gun, robbed them, kidnaped the girl and attempted to rape her. The three juveniles denied that defendant was their companion on the night in question, and said they did not know the name of the man who was with them. However, defendant had given the police a statement, admitted in evidence, which substantially connected him with the crime and was completely inconsistent with his testimony at the trial.
Since defendant, in his letter to assigned counsel, indicates that the trial record would support his claim of innocence, we have given particular attention to the transcript of the testimony, the summations and the charge to the jury. We conclude that the trial was entirely fair and that guilt was proved beyond a reasonable doubt.

III.
The kidnaping indictment charged, in the words of the statute, that defendant on January 27, 1960, in Haddonfield, Camden County, "unlawfully and feloniously did kidnap, steal and forcibly take away" Miss G from Haddonfield and "unlawfully and feloniously did carry [her] to another point in the State," namely Delaware Township, in Camden County, contrary to N.J.S. 2A:118-1. At the close of the trial the prosecution moved that the indictment be amended to read that defendant "unlawfully and feloniously did forcibly take away" Miss G from Haddonfield, etc. There was no objection to striking the words "kidnap, steal and" from the indictment.
Initially, defendant contends that the coexistence of N.J.S. 2A:86-1 and 2, relating to abduction, and N.J.S. 2A:118-1, the kidnaping statute, violates the Fourteenth Amendment to the Federal Constitution in that it denies those *322 coming within their provisions the equal protection of the law. The argument is that "Different persons are subjected to different degrees of punishment for the same alleged conduct, based upon the statute under which the state proceeds. The determination of punishment, to a great extent, is established by the whim of the prosecutor and grand jury upon indictment rather than by the court upon conviction."
Although a defendant could, in certain circumstances, be charged with and found guilty of violating either statute, it is equally true that many sets of circumstances might establish guilt of the violation of N.J.S. 2A:118-1 (kidnaping) and not N.J.S. 2A:86-1 and 2 (abduction). N.J.S. 2A:86-1 and 2 deal, essentially, with abduction and marriage (or defilement) of a female; N.J.S. 2A:118-1 clearly and singularly deals with kidnaping a man, woman or child. The argument defendant makes was fully discussed and resolved in State v. Johnson, 67 N.J. Super. 414, 418 et seq. (App. Div. 1961). We consider that decision definitive and controlling. Defendant was properly charged and convicted of violating the kidnaping statute.
Defendant next attacks that part of the kidnaping statute under which he was indicted as constitutionally void by reason of vagueness. The argument here is that the statutory language is so general that it may be construed to embrace not only acts commonly recognized as reprehensible but also others which it would be unreasonable to presume were intended to be made criminal. It is said that a serious question might be raised whether the statute is not applicable to a situation where a policeman forcibly takes a felon from the scene of the crime to the police station, or a person involved in an automobile accident to a doctor's office for examination to determine whether he was driving while under the influence of intoxicating liquor; or in some instances where one parent takes his child from the custody of the other parent; or where a staff member of a state institution transports a patient or inmate to another institution. Defendant states he has found no reported case in support of this contention.
*323 4 Blackstone, Commentaries, c. 15, § 9, p. 219 defined kidnaping as "the forcible abduction or stealing away of a man, woman or child, from their own country, and sending them into another." In the act of March 18, 1796, "An Act for the punishment of crimes," kidnaping was defined in section 54:
"That if any person shall kidnap, or steal, or forcibly take away any man, woman or child, bond or free, and send or carry, or with intent to send or carry such man, woman or child from this State into another State or country * * * then the person so offending * * * shall be adjudged to be guilty of a high misdemeanor."
The crime was punishable by a fine of $1,000 or imprisonment for five years, or both. Paterson, Laws of New Jersey, p. 218 (1800). The statutory language "kidnap, or steal, or forcibly take away" has been used ever since, for more than a century and a half. Revision of April 16, 1846, § 62 (Elmer's Digest of the Laws of New Jersey (4th ed. 1868), p. 203); P.L. 1875, p. 51; Revision of 1898, L. 1898, c. 235, § 114; L. 1907, c. 55, § 1; L. 1928, c. 182, § 1; L. 1933, c. 374, § 1; R.S. 2:143-1; N.J.S. 2A:118-1. Only the penalty has changed from time to time. See State v. Johnson, above, 67 N.J. Super., at page 421.
Statutory language must be given a reasonable construction in order to promote the efficient enforcement of our criminal law, prevent crime and advance the ends of justice. State v. Dunlap, 61 N.J. Super. 582, 588 (App. Div. 1960). In that case we quoted from People v. Hope, 257 N.Y. 147, 152, 177 N.E. 402, 404 (1931), where the Court of Appeals said of the New York kidnaping law that the object of the statute and of the common law on the subject was the same  "to secure the personal liberty of citizens and to secure to them the assistance of the law necessary to release them from unlawful restraint."
Our kidnaping statute, as just noted, has always spoken of kidnaping or stealing or forcibly taking away a man, woman or child, etc. "Kidnap" takes us back to the common law definition. Cf. State v. Butler, 27 N.J. 560, *324 588 (1958) ("burglary"). The words "kidnaps," "steals," and "forcibly takes away," which appear in N.J.S. 2A:118-1, must be read in the light of the ejusdem generis rule. All three therefore carry the imprint of unlawful action. This was clearly implied in In re Kelsey, 21 A.2d 676, 19 N.J. Misc. 488 (C.P. 1941). See, generally, 51 C.J.S., Kidnaping, § 1b(2), p. 433 (1947), which states that it is an essential element of the offense of kidnaping that the taking of the person shall be without lawful authority, even though the statute does not expressly so provide. See Doss v. State, 23 Ala. App. 168, 123 So. 237 (Ct. App. 1929), certiorari denied 220 Ala. 30, 123 So. 231, 68 A.L.R. 712 (Sup. Ct. 1929). Accordingly, we conclude that the only reasonable construction of N.J.S. 2A:118-1 is that the forcible taking away of a man, woman or child from one point to any other point within this State must be without lawful authority. Defendant's act was precisely of that nature.
The third point raised on defendant's behalf is that the conviction for assault with intent to commit rape was void because the indictment on which it was based was fatally defective. Specifically, the charge is that the indictment failed to specify the essential facts necessary for the interposition of a plea of autrefois convict or autrefois acquit in the event of a further prosecution for the same offense. This should have been raised by motion before trial. R.R. 3:5-5(b) (2). But that aside, we find the argument without validity. The indictment clearly stated the offense  that defendant "did commit an assault upon one [Miss G] with intent to rape her, contrary to the provisions of N.J.S. 2A:90-2, * * *." If defendant desired further information as to the details of the crime, such as the exact time when and place where it was committed, he could have obtained the desired facts by a bill of particulars. State v. LeFante, 14 N.J. 584, 593-4 (1954); R.R. 3:4-6.
Finally, we are asked to reduce the sentences imposed by the trial judge, or have them run concurrently. State v. Johnson, above, 67 N.J. Super. 414 (App. Div. 1961), is cited in *325 support. The claim is that each of the sentences, taken by itself, was severe; together, they result in an unduly harsh sentence  a lifetime in prison.
The power of this court to reduce a sentence should be exercised with extreme care, and only in cases where the sentence imposed was unduly punitive. Primarily, the imposition of sentence rests within the sound discretion of the trial judge. While it is now firmly established by the Johnson case that the quantum of sentence may be reviewed by the appellate court, we must consider the sentence in the light of the total circumstances in determining whether the trial judge was justified in acting as he did. The burden of establishing that the sentence was excessive rests upon the defendant, and he may succeed in his contention only where it clearly appears that the judge abused his judicial prerogative.
In this connection, defendant urges that the three crimes all arose out of a single episode. The characterization is self-serving and incorrect. First came the robbery of the engaged couple. There followed defendant's decision to forcibly carry away Miss G, allegedly only for the purpose of taking her as far as the nearby bridge where she would be left with the keys to the car. Ultimately defendant, the ringleader and guiding spirit of the affair, decided to transport the girl to a distant place for the purpose of raping her. All this represents a sequence of events deliberately undertaken, one after the other, rather than a single episode.
We are not insensible to the fact that the punishments imposed were severe in their totality. On the other hand, kidnaping, unlike most crimes, requires a mandatory sentence of at least 30 years  a punishment which the Legislature in its wisdom has deemed necessary to impose for this very serious crime. The sentences for assault with intent to rape and for the armed robbery were well within the maximum limits fixed by our criminal statutes.
It is probably true that defendant's early environmental background conditioned his lawlessness. This and other *326 pertinent information was set out in the presentence report made available to the trial judge, and was undoubtedly weighed by him. Our examination of the information given the court shows that defendant was sentenced in 1954 as a juvenile for the crimes of sodomy and armed robbery. The authorities at Jamesburg Reformatory, where he was confined, found him too difficult to handle. He escaped from that institution and, upon his return, was transferred to the Bordentown Reformatory. Released in April 1958, he was recommitted just three months later for breaking, entering and larceny. He was paroled in November 1959. In February 1960 he was committed for violation of probation. Then came a prison sentence imposed on November 20, 1960 for armed robbery  not the one involved in this case. The parole office considers defendant a dangerous character. We thus have a man who presents a picture of utter criminality and, to judge from this case, a man of inhuman conduct. Hope of rehabilitation would appear to be faint, if it exists at all.
Neither the circumstances of defendant's crimes nor the character of the man himself suggests possible leniency, unless we disregard the public safety and welfare.
Affirmed.