110 N.J. Super. 547 (1970)
266 A.2d 307
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWSON PROVOID, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 15, 1970.
Decided June 22, 1970.
*551 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. Arthur Penn, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Joseph A. Falcone, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant was indicted for murder, tried to a jury and, following an eight-day trial, found guilty of manslaughter. He was sentenced to a State Prison term of 5-7 years. His subsequent motion for reduction of sentence was denied. He appeals his conviction.
Defendant and his family lived in the upstairs portion of a two-family house in Newark, the downstairs being occupied by the Arnold family. Although once on good terms, ill will developed between the families, attended by frequent disputes and altercations.
On July 4, 1967 Wilkie Judd, Mrs. Arnold's brother, came to spend the holiday with the Arnolds. There was a good deal of beer drinking for most of the day, at a neighborhood barbecue in the afternoon and the Arnold apartment later on. The essence of the Arnold version of what occurred was that *552 toward evening Mrs. Arnold had admonished defendant's children for setting off firecrackers under a car, and she claimed to have been hit in the knee by an object thrown by defendant's son Anthony. The Arnolds called the police, and this infuriated defendant. When Mr. Arnold went outside to get some cigarettes from his car, he encountered the irate defendant, who came out of some bushes brandishing a car jack handle. After some words, defendant knocked Arnold unconscious. When Judd hurried outside to investigate and was bending over the injured Arnold, defendant struck and killed him. Mrs. Arnold claimed that defendant then assaulted her.
Defendant's account of the incident was completely different. He testified that his son Anthony had complained of Mrs. Arnold chasing him. When he went out for a paper a little later and walked down from the front porch he was accosted by Arnold, Judd and an unidentified third man, all of them threateningly waving knives. According to defendant, he had to flee the premises twice and, as he was in the course of again returning, picked up a jack handle that he happened upon as he was crossing a nearby vacant lot. He testified that as he approached the house the three men menaced him with their weapons and he began swinging the jack handle. Arnold and Judd were hit, and the third man ran away. This took place on the sidewalk or out in the street, where Judd was found. Arnold was taken to the hospital. Defendant said that after hitting the two men he went to a neighborhood bar where he told the bartender, "I have just killed a couple of fellows up the street," and asked that the police be called.
Defendant's testimony was substantially corroborated by his wife and son. The wife claimed that Mrs. Arnold had removed the knives from the hands of the unconscious men in the street. The police found the jack handle under Arnold's car and various kitchen knives in the Arnold apartment. At trial defendant claimed excusable homicide by way of self-defense. N.J.S.A. 2A:113-6.
*553 Defendant first argues that the trial judge incorrectly charged the jury as to self-defense. This is raised as plain error, no objection having been taken. The judge said:
When a person claims he acted in self-defense the question of whether he should have retreated arises. The duty to retreat does not arise unless a person resorts to the use of deadly force. A deadly force is force which the defendant has reason to know will create a substantial risk of causing death or serious injury.

* * * * * * * *
Now, if you find that the defendant intentionally resorted to the use of force with a knowledge of an available opportunity to retreat with complete safety he was then under a duty to retreat without resorting to the use of deadly force. However, there is no positive duty to retreat nor a categorical proof of guilt if he in good faith believed even though mistakenly that he could not have retreated with complete safety to himself. The opportunity to retreat, however, is a factual element to be considered under the principles stated above together with all other surrounding circumstances in determining only such resistance and force as appeared to be necessary under all the circumstances.
Specifically, defendant urges that since the incident occurred within the "curtilage" of his own premises, he was under no affirmative duty to retreat before resorting to deadly force in his own defense. He further contends that even if one were to assume that the attack upon him by Judd occurred in the street a few feet from the sidewalk, he was still within the curtilage of his own home and hence under no obligation to retreat.
The issue of retreat arises only where a defendant resorts to deadly force. The general rule is that he has a duty to retreat from his assailant when attacked, assuming that he reasonably perceives that he can do so in complete safety. State v. Abbott, 36 N.J. 63, 69 et seq. (1961); State v. DiMaria, 88 N.J.L. 416 (Sup. Ct. 1916), aff'd o.b. 90 N.J.L. 341 (E. & A. 1917). However, this common law doctrine is not applied when the person is assailed in his own dwelling; in such a case he is under no duty to retreat from his personal bastion. See People v. Tomlins, 213 N.Y. 240, 107 N.E. 496 (Ct. App. 1914); Palmer v. State, 9 *554 Wyo. 40, 59 P. 793 (Sup. Ct. 1900). As to just what constitutes the limits of a "dwelling," the majority of jurisdictions in this country have concluded that the privilege of self defense without retreat extends to anywhere within the "curtilage" of a man's home. See State v. Abbott, above, 36 N.J. at 67; see also Beard v. United States, 158 U.S. 550, 15 S.Ct. 962, 39 L.Ed. 1086 (1895); State v. Frizzelle, 243 N.C. 49, 89 S.E.2d 725 (Sup. Ct. 1955). The few cases dealing with the subject have emphatically affirmed that the curtilage of one's residence does not, as defendant would have it, extend to a public thoroughfare running along the boundary of one's property. See Nunn v. State, 19 Ala. App. 619, 99 So. 738 (Ct. App. 1924); State v. Boyd, 126 S.C. 300, 119 S.E. 839 (Sup. Ct. 1923); 40 Am. Jur.2d 1485 (1957). The killing here unquestionably occurred in the public street fronting the residence. Thus, despite the fact that, according to defendant's version of the incident, the assault was initiated on the front steps of the house, he was, in the circumstances, under a positive duty to retreat once he was in the street.
Even had the incident leading to the fatal assault occurred on the Arnold-Provoid property, it has consistently been held that if the premises in question are jointly occupied by the assailant and the defender, then there is no privilege of nonretreat, and the ordinary rules of self-defense apply. See State v. Pontery, 19 N.J. 457, 475 (1955); Warren on Homicide (2d ed. 1938), § 157, at 775; see also, State v. Abbott, above, 36 N.J. at 67. Defendant claims he was attacked by another tenant of the premises (Arnold) and by his lawful guest (Judd). While he possibly need not have retreated from Judd, he surely should have retreated from Arnold, the joint attacker and a co-occupant of the premises. The alleged assaults are not separable in fact or law. Accordingly, since both the killer and the assailants were on commonly held property (under our assumption but not under the actual facts), defendant had no immunity from the ordinary self-defense doctrine and could not claim to have *555 been backed to the wall of his "castle." See State v. Pontery, above.
We therefore conclude that the charge was not erroneous and certainly not plain error. See State v. Gardner, 51 N.J. 444, 456 (1968).
Defendant next argues that certain evidence was improperly admitted and that the trial judge erroneously charged the jury as to the probative weight to be attached thereto. Here, again, the argument is advanced under the plain error rule.
A detective had questioned Arnold at the hospital and recorded a summary of their conversation on an incident report. At trial the officer was permitted to read from his record:
He stated about 9 p.m on July 4th, 1967, Lawson Provoid kicked down his front door and said, "Come on out. I'm going to kill you." Wendell [Arnold] went outside and was struck on the head with a blunt object. What he thought was a hammer. And didn't remember anything else.
The account Arnold gave at trial was quite different.
In his charge the trial judge instructed the jurors that where they recalled conflicting testimony, they could credit either statement and regard it as substantive evidence. Defendant contends that this standard was improper when applied to the prior inconsistent statement Arnold had given the detective. The State, on the other hand, argues that the statement was admissible under the business records exception to the hearsay rule. See Evidence Rules 63(13) and 63(15) (a); see also Brown v. Mortimer, 100 N.J. Super. 395, 402-404 (App. Div. 1968).
The included hearsay was not properly admissible as substantive proof, primarily because the declarant was one of the participants in the fracas and with a possible motive to misrepresent the occurrence. Although the statement might properly have been admitted to challenge Arnold's credibility, it was offered by the State, which ordinarily could not and would not discredit its own witness. *556 See Evidence Rules 20 and 63(1). Accordingly, Arnold's prior statement was improperly admitted.
However, defense counsel failed to object to the testimony when it was offered. Thus, it is incumbent upon the defense to establish that the admission of the included hearsay adversely affected defendant's substantial rights and was of a sufficiently grievous nature as to have a clear capacity to bring about an unjust result. State v. Gardner, above, 51 N.J. at 456. The jury verdict of manslaughter clearly indicates that it did not believe the homicide to have been premeditated. Certainly, it has not been shown that the admission of the hearsay statement in any way prejudiced defendant.
As to the allegedly improper jury charge, it is evident that the reference to contradictory statements was not focused on the matter here under consideration. Even if it were so misconstrued by the jurors, it is evident from their verdict that they were not swayed by the language of the hearsay statement in the detective's report.
We therefore hold that defendant has failed to make an adequate showing of plain error warranting reversal.
After the defense had presented its case the State was permitted to call a police officer to testify as to the handling and recording of telephone complaints. He said that the police complaint report cards showed that a telephone call had been received on the date of the incident from someone named Arnold, alleging an atrocious assault and battery. The record was admitted in evidence. Earlier, on the State's main case, a police officer had testified that telephone records were normally destroyed after a period of time. The trial judge permitted this supplemental proof over defense counsel's vigorous objection, either as rebuttal evidence or, alternatively, on the basis of a reopening of the State's case to receive further evidence. Defendant argues that the testimony was improper rebuttal and that, as regards the telephone record itself, there was not sufficient authentication as to who actually placed the call to headquarters.
*557 Ordinarily, rebuttal is confined to the contradiction of specific subjects introduced on direct or cross-examination of defense witnesses. State v. Steensen, 35 N.J. Super. 103, 107 (App. Div. 1955). However, where the evidence would properly have been admissible in chief, the trial judge is vested with broad discretion, and the appellate tribunal will not disturb the lower court's determination in the absence of gross abuse. State v. DeRocco, 53 N.J. Super. 316, 323 (App. Div. 1959); State v. Balles, 47 N.J. 331, 343 (1966), app. dism. 388 U.S. 461, 87 S.Ct. 2120, 18 L.Ed.2d 1321 (1967). The officer's testimony, as we have observed, was admitted on the alternate ground of reopening the case, the obvious purpose being to assure the fullest possible exposition of the true facts. See State v. Wolf, 44 N.J. 176, 188-191 (1965). There was no abuse of judicial discretion.
As to the record of the phone call, it was sufficiently authenticated to come in under the business records exception to the hearsay rule. See Evidence Rule 63(13). Defendant's reliance on an excised quotation from State v. Bassano, 67 N.J. Super. 526 (App. Div. 1961), is misplaced. The Bassano court, while recognizing the difficulties inherent in admitting such unidentified reports, affirmed the admission of the telephone statement as circumstantial evidence, on the ground that the jury could, in the particular circumstances of that case, reasonably find that the call had been made by defendant. (At 534.) Equally so here: the jury could reasonably have concluded that Mrs. Arnold had made the phone call after the incident, and the documentary evidence would then be admissible as circumstantial proof.
We find no error in the "rebuttal" testimony or in the admission of the telephone record.
Defendant claims error in the denial of a mistrial because the judge referred to facts not in evidence when charging the jury. Defendant's wife testified out of the hearing of the jury that she had once filed a complaint charging her husband *558 with assault and battery. In the course of his charge the judge, discussing the maxim falsus in uno, falsus in omnibus, instructed the jury:
Now, if you believe that any witness willfully or knowingly or intentionally testified falsely to any material facts in this case you may give such weight to his or her testimony as you may deem it is entitled to. You may believe all of it, some of it or you may in your discretion disregard all of it.
In this regard there was a query put to the defendant's wife, Mrs. Provoid. She was asked whether she had ever filed a complaint in the Municipal Court charging her husband with committing an assault and battery. At first her reply was "no" but upon further examination she admitted that she had been struck and filed a complaint. The reason the Court permitted this line of questioning was only for the purpose of impeaching, if it did, Mrs. Provoid's credibility and it may not be considered by you for the purpose of inferring that it tends to prove that the defendant. Provoid, had a disposition for committing acts of violence or for committing assaults and batteries or had a violent temper.
Defense counsel promptly objected to the judge's reference to testimony not in evidence and moved for a mistrial. The judge declined to do so, but recalled the jury and corrected his previous instruction by charging that
* * * there is no evidence in this case that any complaint was filed by Mrs. Provoid against her husband. * * * There is no other complaint that need be or should be considered by you people as a complaint made by Mrs. Provoid.
Defendant argues that the curative instruction was insufficient to erase the improper reference from the minds of the jurors, citing the general language of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
The disposition of a mistrial motion is properly addressed to the sound discretion of the trial judge, and a denial will not be reversed absent a clear showing of prejudice to defendant. State v. O'Leary, 25 N.J. 104, 116 (1957). Mistrial is an extraordinary remedy and should be resorted to only to prevent an obvious failure of justice. State v. Neff, *559 67 N.J. Super. 213, 220 (App. Div. 1961). Accordingly, while the original instruction was erroneous in content and potentially prejudicial, it cannot be said as a matter of law that the attempted correction was insufficient and that the trial judge therefore abused discretion in refusing to declare a mistrial.
Upon being found guilty of manslaughter, defendant was sentenced to a State Prison term of from five to seven years. He contends that the sentence was manifestly excessive in view of his having no previous criminal record and his general good conduct.
It is firmly established that the sentencing judge has broad discretion and exclusive jurisdiction to determine the quantum of the sentence, within statutory bounds. State v. Pohlabel, 61 N.J. Super. 242, 251 (App. Div. 1960). However, the sentence is reviewable and an appellate court may reduce it, even though it lies within statutory limits, "whenever the interests of justice so require." State v. Laws, 51 N.J. 494, 509-510 (1968); cf. State v. Bess, 53 N.J. 10 (1968). But before the reviewing court will interfere there must be a clear showing of abuse of discretion, State v. Tyson, 43 N.J. 411, 419 (1964), cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965), and the burden of doing so is squarely on defendant, State v. Cox, 101 N.J. Super. 470, 475 (App. Div. 1968), certif. den. 53 N.J. 510 (1969); State v. Gibbs, 79 N.J. Super. 315, 325 (App. Div. 1963). The power to revise a sentence should be exercised only with extreme care. State v. Cox, above, 101 N.J. Super. at 475; State v. Gibbs, above, 79 N.J. Super. at 325.
While defendant's record and background are admittedly anything but damning, the sentence imposed by the trial judge is well within the statutory limits. Defendant has shown no abuse of discretion, and we find none.
Finding no substantial prejudice to have been visited upon defendant in any of the several respects argued, considered individually or cumulatively, the conviction is affirmed.