**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5621-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JARED RAZZANO,

     Defendant-Appellant.

_____

Submitted February 22, 2021 – Decided April 26, 2021

Before Judges Rothstadt and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 18-08-0530.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Snyder, Designated Counsel, of counsel and on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Amanda Frankel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from his jury trial convictions for aggravated assault and unlawful possession of a weapon. The charges arise from a violent altercation that occurred on defendant's driveway. Defendant contends the trial judge improperly instructed the jury on the law of self-defense, the jury rendered inconsistent verdicts, the guilty verdicts were against the weight of the evidence, and the seven-year prison sentence he received was excessive. After carefully reviewing the record in light of the applicable legal principles, we reject defendant's contentions and affirm the convictions and sentence.

## I.

In August 2018, a grand jury returned an indictment charging defendant with first-degree attempted murder, N.J.S.A. 2C:5-1(a)(2) and (3) and N.J.S.A. 2C:11-3(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5(d).

In February 2019, Judge Anthony F. Picheca, Jr. presided over a jury trial over the course of seven non-consecutive days. The jury acquitted defendant of attempted murder and possession of a weapon for an unlawful purpose but found him guilty of aggravated assault and unlawful possession of a weapon. Judge

Picheca sentenced defendant on the second-degree aggravated assault conviction to a seven-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and to an eighteen-month prison term on the fourth-degree unlawful possession of a weapon conviction. The judge ordered the prison sentences to run concurrently.

Because defendant contends the guilty verdicts were against the weight of the evidence, we recount the proofs elicited at trial in considerable detail. The violent confrontation occurred on June 13, 2018. The victim, P.M.,[1] came to visit a friend who lived close by defendant's house. P.M. parked his car in a manner that blocked defendant's driveway. P.M. complied with defendant's demand to move the vehicle. P.M. testified that after he moved his vehicle to the other side of the road, he was carrying a carpenter's level that he intended to return to his friend. Defendant called him over and attacked him with an object P.M. described as "an iron stick," then later with "something else that looked like a sword." At the time of the altercation, defendant weighed approximately 230 pounds, while P.M. weighed around 145 pounds. P.M. was beaten to the ground and rendered unconscious. He testified that he neither initiated contact with defendant nor attacked defendant's car as defendant claims.

---

[1] We use initials to protect the victim's privacy.

Defendant gave multiple inconsistent versions of the incident to police which evolved each time the police expressed their disbelief. Immediately after the altercation, defendant called 9-1-1 and told the operator "a male came into his house and attacked him." An electronic recording of that 9-1-1 call reveals that defendant told the 9-1-1 operator the male intruder hit him on the head with "something" and kicked his car.

When police arrived, defendant told them P.M. was the aggressor and had used the carpenter's level to strike defendant's car windshield and hood while defendant was inside the vehicle. Defendant told police P.M. then used the carpenter's level to strike him once he exited the vehicle. Defendant claimed he "wrestled the carpenter's level away from [P.M.] and used that to defend himself." Defendant gave consent for police to search his property for the weapon.[2] By this point, he claimed that he had used a metal tent pole to defend himself. When the officers told defendant "that he was lying about that tent pole being used," defendant then admitted he used a weapon that he first described as a "piece of wood . . . similar to a police nightstick, a billy club." The officers again indicated their incredulity that such a weapon could cause the sort of

_____

[2] Defendant does not contest the lawfulness of the consent search. Nor does he challenge the admissibility of the statements he made to the police.

A-5621-18

injuries inflicted upon P.M.  Defendant apologized and told the officers he was going to "tell . . . the truth," explaining that he wielded "a sharper piece of metal," a "little collapsible shovel" that he used to dig worms.  At that point, the officers read defendant his Miranda[3] rights.  Defendant then signed a standard Miranda warning waiver form and again gave consent for police to search his property.

Defendant then led police to the actual weapon: a three-foot-long "black curved sword" that appeared to be covered with wet blood.  When an officer remarked "this isn't a shovel," defendant replied, "I know.  I thought I'd get in trouble if it was a weapon."  Defendant claimed that he did not know how the sword's sheath came off the blade.

The severity of the injuries sustained by defendant and P.M. was markedly dissimilar.  Defendant suffered scrapes and bruises, a nasal contusion,[4] and facial lacerations.  In contrast, P.M. suffered three ten-centimeter (approximately four-inch) scalp wounds, severe damage to his hands, severe lacerations to his forehead, an open elbow wound that exposed a fractured bone,

---

[3]  Miranda v. Arizona, 384 U.S. 436 (1966).

[4]  Defendant claims his nose was broken in the melee.  However, he never presented any evidence to support that assertion.

two rib fractures, and a skull fracture extending into his sinuses. The elbow wound required multiple surgeries and caused impaired motor function and loss of feeling in his left hand. His injuries also required the partial amputation of fingers on his right hand.

Defendant raises the following arguments for our consideration:

POINT I

THE TRIAL COURT COMMITTED ERROR WHEN IT DENIED DEFENDANT'S REQUEST FOR A JURY CHARGE ON "USE OF FORCE UPON AN INTRUDER."

POINT II

THE JURY'S VERDICT OF GUILTY TO SECOND DEGREE AGGRAVATED ASSAULT AND UNLAWFUL POSSESSION OF A WEAPON WAS AGAINST THE WEIGHT OF THE EVIDENCE.

POINT III

THE DEFENDANT'S SENTENCE WAS EXCESSIVE.

## II.

We first address defendant's contention the trial judge erred in instructing the jury on the pertinent principles of self-defense. Defendant requested that the jury be instructed on the "use of force upon an intruder" pursuant to N.J.S.A. 2C:3-4(c), rather than the general use of force instruction pursuant to N.J.S.A.

6

2C:3-4(a) and (b).  N.J.S.A. 2C:3-4(c) was added to the penal code in 1987.  <u>P.L.</u> 1987, <u>c.</u> 120.  It provides in relevant part:

> . . . the use of force or deadly force upon or toward an intruder who is unlawfully <u>in a dwelling</u> is justifiable when the actor reasonable believes that the force is immediately necessary for the purpose of protecting himself or other persons <u>in the dwelling</u> against the use of unlawful force by the intruder on the present occasion.
>
> [(emphasis added).]

Judge Picheca rejected defendant's request-to-charge, ruling that N.J.S.A. 2C:3-4(c) applies only to dwellings and that term does not include the driveway on which this incident occurred.  Judge Picheca made specific factual findings in support of his ruling.  He found that defendant's driveway did not lead directly to the front entrance of the house but rather ran parallel to it.  He also found that the driveway did not extend to the base of the front stairway or porch.

We are required to accept the facts found by the trial judge so long as they "are supported by sufficient credible evidence in the record."  <u>State v. Evans</u>, 235 N.J. 125, 133 (2018) (quoting <u>State v. Elders</u>, 192 N.J. 224, 243 (2007)).  Accordingly, "[a] trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'"  <u>Elders</u>, 192 N.J. at 244 (quoting <u>State v. Johnson</u>, 42 N.J. 146, 162

(1964)).  Based on these particular circumstances, we agree with Judge Picheca's thoughtful analysis and conclude the driveway was not part of defendant's "dwelling" within the meaning of N.J.S.A. 2C:3-4(c).

The standard of review for jury charges is well-established. "It is axiomatic that clear and correct jury charges are essential to a fair trial . . . ." Das v. Thani, 171 N.J. 518, 527 (2002).  Courts should explain the controlling law in clear and understandable language.  Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 374 (2007); Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000).

The term "dwelling" is not defined in N.J.S.A. 2C:3-4(c).[5]  The plain language of the phrase "in a dwelling"[6] nonetheless suggests this statutory provision applies only to events occurring inside a structure or at least appurtenant to a structure, not outdoors far removed from a structure.  In State

---

[5]  The Model Criminal Jury Charge defendant requested explains that a "dwelling" is "any building or structure though movable or temporary, or a portion thereof, which is used as a person's home or place of lodging." Model Jury Charges (Criminal), "Justification – Use of Force Upon an Intruder (N.J.S.A. 2C:3-4(c))" (rev. Sept. 21, 2016).  The model charge further explains that "dwelling includes the entranceway of a building or structure" and also "includes a 'porch or similar appurtenance.'"  Ibid.

[6]  The statute also uses the phrase "in the dwelling." N.J.S.A. 2C:3-4(c) (emphasis added).  We discern no significance to the use of different articles, and we focus our attention instead on the word "in."

v. Martinez, for example, we held that for purposes of N.J.S.A. 2C:3-4(c), the term "dwelling" includes the threshold of the house, such as the porch or front door. 229 N.J. Super. 593, 604 (App. Div. 1989). In State v. Bilek, we held that "dwelling" includes the doorway or entranceway of an apartment. 308 N.J. Super. 1, 12 (App. Div. 1998). So far as we are aware, no judicial decision has interpreted N.J.S.A. 2C:3-4(c) to apply to an altercation that occurs entirely outdoors at a location that is not on or at the entranceway to a structure.

Defendant urges us to interpret the word dwelling expansively to encompass any part of the so-called "curtilage" of a house, citing case law that holds that Fourth Amendment privacy protections may in certain circumstances be afforded to driveways. See State v. Domicz, 188 N.J. 285, 302 (2006) ("Curtilage is land adjacent to a home and may include walkways, driveways, and porches.") (emphasis added) (citing State v. Johnson, 171 N.J. 192, 208–09 (2002)). Defendant argues that because the United States and New Jersey constitutions afford constitutional protection against unreasonable searches and seizures to areas with the curtilage of a home, a homeowner "should not be required to retreat from his driveway appurtenant to his home before resorting to self-defense."

We decline defendant's invitation to import Fourth Amendment principles to define the geographic scope of use-of-force justification defense established in N.J.S.A. 2C:3-4(c). The Fourth Amendment and its state constitutional counterpart, Article I, paragraph 7 of the New Jersey Constitution, serve a different purpose than the statutory framework that explains when a person is justified in using force, including deadly force, in self-protection or the protection of others. The Fourth Amendment establishes a right of privacy in private premises and protects against intrusions by the government in the form of arrests, searches, and seizures. It does not protect against the assaultive conduct of private actors. See State v. Navarro, 310 N.J. Super. 104 (App. Div. 1998) (holding that the Fourth Amendment applies only to government actions and not to unreasonable searches conducted by a landlady). Ultimately, the scope of the self-defense-against-an-intruder doctrine is defined by statute, not by Fourth Amendment principles.

We find support for our conclusion that N.J.S.A. 2C:3-4(c) does not extend to driveways in a case defendant relies heavily upon. Defendant selectively quotes from State v. Bonano, 59 N.J. 515 (1971), for the proposition that New Jersey's self-defense jurisprudence allows persons to stand their

ground while within the curtilage of their home. In reality, the Court's reasoning in <u>Bonano</u> suggests the opposite conclusion.

In <u>Bonano</u>, our Supreme Court addressed the scope of the so-called "castle doctrine," which is the common law exception to the general rule that a person must retreat when it is reasonably safe to do so before using deadly force for self-protection or the protection of others.[7] <u>Bonano</u> was decided long before N.J.S.A. 2C:3-4(c) was enacted,[8] focusing on our State's predecessor general self-defense statute, N.J.S.A. 2A:113-6—which was silent on the question of home intruders—and on common law principles exempting the general duty to retreat when using protective force in one's own home. The Court quoted our then-recent observation in <u>State v. Provoid</u>, 110 N.J. Super. 547, 554 (App. Div. 1970) ("the majority of jurisdictions in this country have concluded the privilege of self-defense without retreat extends to anywhere within the 'curtilage' of a

---

[7] We note that N.J.S.A. 2C:3-4(c) differs from the general rule of self-defense set forth in N.J.S.A. 2C:3-4(a) and (b) in several respects and not just as to the duty to retreat. These substantive differences are explained in our decision in <u>Bilek</u>, 308 N.J. Super. at 11–12 and need not be recounted in this opinion.

[8] As we have noted, N.J.S.A. 2C:3-4(c) was enacted in 1987. <u>L.</u> 1987, <u>c.</u> 120, §1. <u>Bonano</u> also was decided before the current general self-defense statutory provisions codified in N.J.S.A. 2C:3-4(a) and (b) were enacted as part of the New Jersey Code of Criminal Justice (Penal Code), N.J.S.A. 2C:1-1 to 104-9 (<u>L.</u> 1978, <u>c.</u> 95).

11

man's [or woman's] home."), remarking, "[t]his is, indeed, the majority view, and yet one may question its soundness." 59 N.J. at 520. The <u>Bonano</u> Court noted that "'[c]urtilage' is not a term that can in all cases be precisely defined," then posed the rhetorical question, "[m]ight not the better rule be that a duty to retreat should exist except as to the dwelling house itself, defined, as stated above, to include a porch or other similar appurtenance?" <u>Ibid.</u> The Court concluded, "[t]his case does not raise the issue and we leave its resolution to another day." <u>Ibid.</u> The Court nonetheless made clear, "[a]t this time, however, we limit our acceptance of this [castle] rule to those cases <u>where the defendant is actually in his dwelling house</u>. A porch or other similar physical appurtenance is deemed to come within this concept." <u>Ibid.</u> (emphasis added).

Defendant in his appellate brief does not cite to or acknowledge these critical portions of <u>Bonano</u>, which contradict the central tenet of his argument. We share the <u>Bonano</u> Court's concern that the term "curtilage" is not well-defined. Grafting the curtilage concept into the definition of a dwelling for purposes of N.J.S.A. 2C:3-4(c), therefore, might introduce uncertainty and ambiguity to the Penal Code.[9] For example, if we accepted defendant's broad

---

[9] In <u>Domicz</u>, our Supreme Court noted:

interpretation, would the self-defense-against-intruders statute apply to the entire length of a driveway, extending to the apron that abuts a public sidewalk or street? Or is there an invisible line on a driveway—fixed somewhere between the point closest to the house and the outer boundaries of the property line—where the circumstances in which deadly force is authorized abruptly changes? We leave that type of delineation to the Legislature and decline to interpret this use-of-force provision in a way that might render it impermissibly vague. Importantly, although the Legislature presumably was aware of the relevant precedents when it enacted N.J.S.A. 2C:3-4(c) in 1987, it did not employ the

> Whether the Fourth Amendment safeguards an area of curtilage depends on a consideration of various factors, including "'whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.'" Johnson, 171 N.J. at 208–09 (quoting United States v. Dunn, 480 U.S. 294, 301 (1987)). An area within the curtilage to which the public is welcome, such as a walkway leading to an entrance to a home, is not afforded Fourth Amendment protection because the resident has given implicit consent to visitors to approach the home that way. See id. at 209.
>
> [188 N.J. at 302.]

term curtilage and instead chose a formulation closely aligned with the more narrowly-crafted holding in <u>Bonano</u>.

If the Legislature intended to extend the intruder self-defense provision to driveways, it would have done so without expressly limiting the geographic scope of this justification defense to incidents occurring "in a dwelling." Accordingly, we conclude N.J.S.A. 2C:3-4(c) is inapplicable to the particular facts presented in this case and the jury was properly instructed on the governing law of self-defense.

## III.

We turn next to defendant's contention the jury rendered inconsistent verdicts by convicting him of aggravated assault while acquitting him of possession of a weapon for an unlawful purpose.[10] We start our analysis by noting that defendant relies inappropriately on <u>State v. Peterson</u>, 181 N. J. Super 261, 266 (App. Div. 1981), to support his argument that the acquittal on the count charging possession of a weapon for an unlawful purpose precludes his conviction for aggravated assault. Defendant's argument, aside from being

---

[10] We note that defendant under a single point heading contends the jury rendered inconsistent verdicts and verdicts that were against the weight of the evidence. Although these contentions are related, we choose to address them in separate sections of this opinion.

factually inapposite in this case,[11] is haunted by the ghosts of long-abandoned legal precedent. In State v. Grey, our Supreme Court recognized that Peterson had been overruled by a subsequent Appellate Division panel in 1990. 147 N.J. 4, 11 (1996) (citing State v. Burnette, 245 N.J. Super. 99, 112 (App. Div. 1990)). The Supreme Court confirmed that Peterson's reasoning was faulty insofar as it was based upon a Third Circuit case the United States Supreme Court overruled in United States v. Powell, 469 U.S. 57 (1984). 147 N.J. at 11. The Court in Grey thus unequivocally rejected the reasoning expressed in Peterson and instead embraced the Powell rule, which accepts the validity of inconsistent jury verdicts, "understanding that jury verdicts may result from lenity, compromise, or even mistake." State v. Goodwin, 224 N.J. 102, 116 (2016) (quoting State v. Banko, 182 N.J. 44, 53 (2004)); Grey, 147 N.J. at 11.

Aside from relying on overturned precedent, defendant's argument asks us to ignore our Supreme Court's admonition that reviewing courts must "resist the

---

[11] A conviction for second-degree aggravated assault under N.J.S.A. 2C:12-1(b)(1) by causing serious bodily injury does not require proof defendant used a weapon. Nor does N.J.S.A. 2C:12-2(b)(1) require proof that defendant acted purposely; a reckless culpable mental state suffices to prove the aggravated assault. Accordingly, the jury's guilty and not-guilty verdicts are not necessarily mutually inconsistent. However, as we further explain infra, we are in any event precluded by binding precedent from speculating on how exactly the jury reached its guilty and not-guilty verdicts.

temptation to speculate on how the jury arrived at the verdict." Goodwin, 224 N.J. at 116 (quoting Banko, 182 N.J. at 53). The only inquiry we may pursue is "whether the evidence in the record was sufficient to support a conviction on any count on which the jury found the defendant guilty." Ibid. (quoting State v. Muhammad, 182 N.J. 551, 578 (2005)). As we discuss in the next section of this opinion, there was more than sufficient evidence introduced at trial to support defendant's convictions for aggravated assault by causing serious bodily injury and for unlawful possession of the sword under circumstances not manifestly appropriate for such lawful uses as it may have.

## IV.

Defendant contends the jury rendered its guilty verdicts against the weight of the evidence. Defendant failed to move for a new trial under Rule 2:10-1.[12] As a general matter, "[w]e do not consider a weight-of-the-evidence argument on appeal unless the appellant moved in the trial court for a new trial on that ground." State v. Fierro, 438 N.J. Super. 517, 530 (App. Div. 2015) (citing State

---

[12] We note counsel did argue at sentencing that the verdicts were against the weight of the evidence in support of his contention that a sentencing downgrade was warranted based on mitigating factor four, N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense."). We do not view counsel's sentencing argument as a substitute for a motion for a new trial as required by R. 2:10-1.

v. Perry, 128 N.J. Super. 188, 190 (App. Div. 1973)).  We nonetheless choose to address defendant's argument on the merits, applying the plain error standard of review.  See State v. Weston, 222 N.J. 277, 294 (2015).  Under this standard, a reviewing court will not reverse absent a clear showing of a miscarriage of justice under the law.  State v. Holder, 137 N.J. Super. 300, 305 (App. Div. 1975).

We add that the long-established substantive test for resolving challenges to the sufficiency of the evidence supporting a conviction, as explained in State v. Reyes, is

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [50 N.J. 454, 458–59 (1967); see also State v. Brown, 80 N.J. 587, 591 (1979).]

Applying those legal principles to the record before us, we do not hesitate to conclude the State presented ample and compelling evidence that defendant brutally attacked the victim with a sword and inflicted multiple grievous wounds far surpassing those necessary to constitute serious bodily injury as defined in N.J.S.A. 2C:11-1(b).  We likewise conclude the State provided ample evidence

17

that defendant possessed the bloodied sword under circumstances not manifestly appropriate for whatever lawful uses it may have had. The jury acted well within its province in assessing the credibility of the witnesses and ultimately rejecting defendant's claim of self-defense.

## V.

Finally, we address defendant's contentions regarding the sentence. He argues the sentencing judge erred in finding and weighing aggravating and mitigating factors and erred in denying his motion to be sentenced pursuant to N.J.S.A. 2C:44-1(f)(2) to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.

We emphasize "[o]ur role in reviewing a sentence imposed by a trial judge is limited." State v. L.V., 410 N.J. Super. 90, 107 (App. Div. 2009). We review only

> (1) whether the exercise of discretion by the sentencing court was based upon findings of fact grounded in competent, reasonably credible evidence; (2) whether the sentencing court applied the correct legal principles in exercising its discretion; and (3) whether the application of the facts to the law was such a clear error of judgment that it shocks the conscience.
>
> [State v. Megargel, 143 N.J. at 493 (citing State v. Roth, 95 N.J. 334, 363–65 (1984)).]

Judge Picheca, who was intimately familiar with the circumstances of the violent encounter having presided over the trial, found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) ("The nature and circumstances of the offense . . . including whether or not it was committed in an especially heinous, cruel, or depraved manner"); two, N.J.S.A. 2C:44-1(a)(2) ("The gravity and seriousness of the harm inflicted on the victim"); and nine, N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law"). The judge found mitigating factors four, N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"), and seven, N.J.S.A. 2C:44-1(b)(7) ("The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"). Judge Picheca found the aggravating factors qualitatively outweighed the mitigating factors and sentenced defendant on the aggravated assault conviction to seven years in prison subject to NERA. We note that sentence falls roughly at the midpoint of the five-to-ten-year second-degree range. See N.J.S.A. 2C:43-6(a)(2). The judge imposed a concurrent eighteen-month sentence on the weapons conviction.

19

Defendant contends Judge Picheca failed to adequately explain the basis for finding aggravating factor one, and essentially double-counted aggravating factors related to the harm element of the aggravated assault offense. We disagree. The record makes clear the judge thoroughly explained the basis for his finding that the offense was committed in a heinous, cruel, or depraved manner, as shown not just by the fact the harm inflicted on the victim far exceeds that necessary to establish serious bodily injury, see N.J.S.A. 2C:11-1(b), but also by the multiple blade wounds to the head, and multiple defense wounds to the victim's hands, reflecting an unrelenting barrage of strikes.

We likewise reject defendant's argument the sentencing judge abused his discretion by declining defendant's application to invoke the sentencing downgrade statute, N.J.S.A. 2C:44-1(f)(2). That provision reads in pertinent part:

> In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.

As the Supreme Court made clear in Megargel, a defendant bears the burden to demonstrate "a compelling reason to downgrade defendant's sentence

under N.J.S.A. 2C:44-1(f)(2)." 143 N.J. at 501–02. This "compelling reason" standard entails a two-pronged analysis. First, as a threshold matter, the sentencing court must be "clearly convinced" that the mitigating factors substantially outweigh the aggravating factors. Id. at 505. Second, the defendant must present "compelling reasons" why the interest of justice would demand a downgraded sentence. "These reasons must be in addition to[] and separate from" the court's conclusion under the first prong of the two-part test. Id. at 502.

Here, Judge Picheca did not find the mitigating factors substantially outweigh the aggravating factors. To the contrary, he found that the aggravating factors outweigh the mitigating factors. That alone precludes a sentencing downgrade. Ibid. We add that defendant also has failed to establish compelling reasons to impose a prison sentence in the third-degree range; he is in no way either "an exceptional defendant '[n]or one caught up in a maelstrom of "engulfing circumstances."'" Id. at 504; Roth, 95 N.J. at 368. In sum, the seven-year prison sentence was appropriate and in no way shocks the judicial conscience. See Roth, 95 N.J. at 363–65.

21

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION