SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Robert Goodwin (A-20-14) (074352)**

**Argued November 10, 2015 -- Decided January 19, 2016**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court determines whether a defendant can be convicted of insurance fraud under N.J.S.A. 2C:21-4.6(a) even when an insurance carrier is not induced by a false statement to pay a damage claim.

Defendant began a relationship with "Stacey" in 2004, and, while still dating Stacey, began a secret relationship with "Linda" in 2008 (the names of the two women are fictitious to protect their privacy). Defendant and Stacey lived together in an apartment on South 11th Street in Newark, New Jersey. In April 2009, Stacey purchased a 1999 Chevy Tahoe, which she insured through Progressive Insurance Company.

On September 13, 2009, defendant took the SUV, which typically was parked in front of the South 11th Street building, and went to Linda's apartment. Around 3:00 a.m., he and Linda parked the SUV on South 9th Street. Between 6:00 and 7:00 a.m., Linda and defendant found the SUV severely damaged from a fire. Defendant told Stacey that the SUV had been stolen and burned, and advised her to call the police. Defendant and Stacey reported to the police that the SUV had been stolen. Detective Anthony Graves, an arson investigator with the Newark Fire Department, concluded that the fire was intentionally set with gasoline and that whoever took the SUV had the ignition key.

Stacey filed a theft and fire claim with Progressive. On April 12, 2010, defendant informed a Progressive investigator that he had the only set of keys and had parked the SUV in front of the South 11th Street building on the evening it was stolen. However, he later admitted that he had parked the SUV in the location where it was found and had lied so that Stacey would not learn he was cheating on her. Although defendant denied setting the SUV on fire, the investigator determined that, in light of defendant's misrepresentation of the facts, it was impossible to verify anything. Consequently, Progressive denied the claim.

Defendant was charged with second-degree arson, third-degree attempted theft by deception, and second-degree insurance fraud. In accordance with the relevant Model Jury Charge (Criminal), the trial court instructed the jury that a person is guilty of insurance fraud if he "knowingly makes or causes to be made a false . . . or misleading statement of material fact . . . in connection with a claim for payment, reimbursement, or other benefit from an insured's company." The court added that "the statement of fact is material if it could have reasonably affected the decision by an insurance company . . . to pay a claim." The jury found defendant guilty of second-degree insurance fraud, but not guilty of arson and attempted theft. He was sentenced to a seven-year prison term.

Defendant appealed, and the Appellate Division reversed his conviction, finding that the case involved two separate insurance claims, one for theft and one for fire damage, and that any false statement had to correspond to one of those claims. The panel reasoned that defendant was not guilty of insurance fraud because Progressive knew that the SUV was not stolen and did not pay the claim. With respect to the fire-damage claim, the panel determined that defendant's assertion that he did not set fire to the SUV was not a false statement unless the jury convicted him of the arson or theft charges. His acquittal on those charges meant that he could not be convicted of insurance fraud because he made no false statement of material fact affecting Progressive's decision to provide coverage for or pay the claim. By concluding that defendant was wrongfully convicted of a crime he did not commit, the panel effectively acquitted him of the insurance-fraud charge. The Court granted the State's petition for certification. 220 N.J. 42 (2014).

**HELD:** A person violates the insurance fraud statute, N.J.S.A. 2C:21-4.6(a), even if an insurance carrier is not induced by that person's false statement to pay a damage claim.

1. The Court's interpretation of a statute is de novo. The relevant portion of the insurance-fraud statute at issue here, N.J.S.A. 2C:21-4.6(a), states that a defendant "is guilty of the crime of insurance fraud if [he] knowingly makes, or causes to be made . . . a false . . . statement of material fact . . . as part of . . . a claim for payment . . .

pursuant to an insurance policy." The statute does not contain any language stating that criminal liability only attaches where an insurance company suffers a loss resulting from its reliance on a false statement. Rather, the statute requires only the knowing submission of a false or fraudulent statement of material fact. (pp. 10-12)

2. Since "material" is not defined in N.J.S.A. 2C:21-4.6 or the related definitional provision, the Court turns to the word's ordinary meaning and views it within the context of the legislation as a whole. The Court notes that, in the context of the perjury statute, N.J.S.A. 2C:28-1(b), material falsification is defined as that which "could have affected the outcome of the proceeding or the disposition of the matter." This definition of materiality, which does not require that the false statement actually corrupt the outcome of a proceeding, is consistent with the way federal courts have construed statutes criminalizing false statements, as well as with the legal definition of "material" in Black's Law Dictionary and the general definition in Webster's New World College Dictionary. It is presumed that the Legislature, when enacting the insurance-fraud statute, was aware of these definitions and did not intend an entirely different meaning. (pp. 12-15)

3. The Court's paramount goal in construing a statute is to give effect to the Legislature's intent. Here, the objectives of the Legislature in enacting the insurance-fraud statute, including the punishment of wrongdoers and deterrence of others, further indicate that it did not intend a definition of the term "false statement of material fact" that would limit the scope of criminal prosecutions to only those cases in which an individual succeeded in inducing an insurance company to pay a false claim. The statute contains no provision stating that the carrier must rely on the misrepresentation to its detriment for criminal liability to attach. (pp. 15-17)

4. While the Model Jury Charge (Criminal), "Insurance Fraud: Making False Statement (Claims)" (2010), as a whole, correctly defines "material fact" under the insurance-fraud statute, the Court instructs that, going forward, only the following portion of the charge should be used in defining "material fact" in order to avoid any confusion and to focus the jury's task as finder of fact: "[T]he statement of fact is material if it could have reasonably affected the decision by an insurance company to provide insurance coverage to a claimant or the decision to provide any benefit pursuant to an insurance policy or the decision to provide reimbursement or the decision to pay a claim." (pp.17-18)

5. The Court rejects the Appellate Division's conclusion that a conviction of insurance fraud required a predicate finding by the jury that defendant was guilty beyond a reasonable doubt of arson or theft by deception, and finds that there is no inconsistency between the verdicts. However, even if the verdicts were inconsistent, the acquittals do not provide a basis to collaterally attack the guilty verdict of insurance fraud. Based on the evidence, a rational jury was free to conclude that defendant's knowingly made false statements could have reasonably affected Progressive's decision whether to pay the claim. (pp. 19-21)

The judgment of the Appellate Division is **REVERSED**, defendant's conviction is **REINSTATED**, and the matter is **REMANDED** to the trial court for entry of judgment consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

ROBERT GOODWIN (a/k/a ROBERT
EBBS, MICHAEL KINK, ROBERT
JAMES, KENNY ROBERTS, FRANK
KIRK, MICHAEL KIRK, MICHAEL
ROBINSON, MICHAEL ROBERTSON,
ROBERT E. GOODWIN, ROBERT
KIRK, ROBERT GOODMAN, MICHAEL
GOODWIN AND RONALD ROBINSON),

    Defendant-Respondent.

Argued November 10, 2015 – Decided January 19, 2016

On certification to the Superior Court, Appellate Division.

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Carolyn A. Murray, Acting Essex County Prosecutor, attorney).

Linda Mehling, Designated Counsel, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

JUSTICE ALBIN delivered the opinion of the Court.

A jury found defendant Robert Goodwin guilty of second-degree insurance fraud, N.J.S.A. 2C:21-4.6.  In doing so, the jury necessarily concluded that defendant knowingly made or caused to be made false statements of material fact concerning

an insurance claim for damage to his girlfriend's sport utility vehicle (SUV). The heart of the State's case was that defendant falsely reported the theft of his girlfriend's vehicle, which was found severely damaged as the result of arson. The insurance company discovered the lie during an investigation when defendant recanted his earlier story that his girlfriend's SUV had been stolen. As a result, the carrier did not reimburse the loss.

The Appellate Division overturned defendant's conviction because the jury was not told that a finding of insurance fraud could be returned only if the carrier actually relied on defendant's false statements. In the Appellate Division's view, the trial court erred by charging a relaxed standard -- that guilt could be found if the false statements had the capacity to influence the insurance company's decision to pay the claim.

We now reverse. A person violates the insurance fraud statute, N.J.S.A. 2C:21-4.6(a), even if he does not succeed in duping an insurance carrier into paying a fraudulent claim. A false statement of material fact is one that has the capacity to influence a decision-maker in determining whether to cover a claim. If the falsehood is discovered during an investigation but before payment of the claim, a defendant is not relieved of criminal responsibility. Here, defendant falsely reported that his girlfriend's vehicle was stolen. It was for the jury to

2

determine whether the series of false statements about the theft generated by defendant had the capacity to influence the insurance carrier in deciding whether to reimburse for the damage caused by the arson.

Because we conclude that the trial court did not err in its charge to the jury, we reinstate defendant's conviction.

I.

A.

Defendant was charged in a three-count indictment with second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(2); third-degree attempted theft by deception, N.J.S.A. 2C:20-4 and N.J.S.A. 2C:5-1; and second-degree insurance fraud, N.J.S.A. 2C:21-4.6. The record in this case consists of the testimony presented by the State and defendant during a four-day jury trial.

Defendant and "Stacey" had been involved in a romantic relationship since 2004 and lived together on the third floor of an apartment at 303 South 11th Street in Newark, New Jersey.[1] In April 2009, Stacey purchased an SUV, a 1999 Chevy Tahoe, which cost over $6000. Stacey made a $3000 down payment and financed the remainder through a loan. Defendant co-signed the loan. The loan payments on the SUV were approximately $282 per month.

---

[1] We use fictitious names for the two women who shared a relationship with defendant to protect their privacy.

Stacey secured automobile insurance from Progressive Insurance Company. The automobile insurance payments were $283 per month. Because Stacey had only a permit to drive, defendant was the primary operator of the SUV.

In 2008, defendant secretly began dating "Linda," who lived in the same apartment building as Stacey's mother on South 8th Street in Newark.

On September 13, 2009, defendant was residing in a first-floor apartment at 303 South 11th Street, following an argument with Stacey. That evening, defendant took the SUV, which was typically parked in front of the South 11th Street building, and went to Linda's apartment. The two then drove to a cookout and arrived back at Linda's home shortly after 3:00 a.m. They parked the SUV on South 9th Street, away from Linda's apartment, to avoid detection by Stacey's mother. Defendant spent the night at Linda's apartment.

According to Linda's testimony, between 6:30 a.m. and 7:00 a.m., she and defendant walked to the SUV because he was going to drive her to work. They found the vehicle severely damaged due to a fire. Linda proceeded to work, and defendant went to Stacey's apartment to report the destruction of the SUV.

Stacey testified that she had last seen the SUV parked outside of her apartment at about 9:30 p.m. or 10:00 p.m. the previous evening. Defendant told Stacey that the SUV had been

4

stolen and "burnt" up and advised her to call the police, which she did. Defendant and Stacey met officers of the Newark Police and Fire Departments at the vehicle's location on South 9th Street. There, Detective Anthony Graves, an arson investigator with the Newark Fire Department, instructed them to meet him at his office later that morning. Stacey described the SUV as "burnt to a crisp in the inside."

Earlier that morning, at approximately 4:30 a.m., Detective Graves had responded to the scene when the interior of the SUV was ablaze. City firefighters quickly extinguished the fire. Detective Graves observed that the SUV's windows were broken and a screwdriver had been used to tamper with the driver's side door lock. The ignition, however, was not damaged. The SUV's anti-theft device prevented the operation of the vehicle without the ignition key. Other than the damage caused by the fire, the vehicle was intact. Detective Graves concluded that whoever took the vehicle had the ignition key and that the fire was intentionally set using gasoline.

Later that morning, defendant and Stacey met Detective Graves at his office. Defendant and Stacey completed separate questionnaires in which they attested that the SUV had been parked in front of 303 South 11th Street at 3:30 a.m. In his investigation report, Detective Graves concluded that the vehicle had been stolen.

5

That same day, Stacey filed a theft and fire claim with her automobile carrier, Progressive Insurance Company. The carrier initiated an investigation into the claim.

On April 12, 2010, Michael Goldman, of the Special Investigation Unit at Progressive, examined both defendant and Stacey under oath regarding the claim. In response to questioning, defendant claimed that he had the only set of keys to the SUV and that he had parked the vehicle in front of the South 11th Street apartment on the evening it was stolen. Investigator Goldman advised defendant that the SUV could not have been operated without the keys. Shortly thereafter, defendant admitted that he had parked the SUV in the spot where it was found in flames. Defendant explained that he lied about the location where he had parked the SUV so that Stacey would not learn that he had been cheating on her. Defendant denied that he had set the vehicle on fire.

According to Investigator Goldman, "based on the misrepresentation of the total facts of what happened, there was no way anything could be verified." Ultimately, Progressive denied the claim based on defendant's misrepresentations about the theft.

B.

In instructing the jury on the law, the trial court charged that a person is guilty of insurance fraud if he "knowingly

6

makes or causes to be made a false . . . or misleading statement of material fact . . . in connection with a claim for payment, reimbursement, or other benefit from an insured's company." The charge mirrored Model Jury Charge (Criminal), "Insurance Fraud: Making False Statement (Claims)" (2010). In particular, the court instructed the jury that "[a]n insured's misstatement is material if when the statement was made, a reasonable insurer would have considered the misrepresented [fact] relevant to its concerns and important in determining its course of action." The court added that "the statement of fact is material if it could have reasonably affected the decision by an insurance company . . . to pay a claim."

The jury found defendant guilty of second-degree insurance fraud, but not guilty of arson and attempted theft. Defendant was sentenced to a seven-year prison term and ordered to pay fines and penalties.

C.

The Appellate Division reversed defendant's insurance-fraud conviction. In an unpublished opinion, the panel held that defendant was "wrongfully convicted" because the jury charge "did not accurately reflect the facts and issues."

The panel maintained that the case involved two separate insurance claims, "the theft claim and the fire damage claim," and that any false statement had to correspond to one of those

claims.  It reasoned that the allegedly false statement that the SUV was stolen "was relevant only to the theft claim" and that the allegedly false statement that defendant did not set fire to the vehicle "was relevant only to the fire damage claim."  The panel asserted that defendant was not guilty of insurance fraud on the theft claim because Progressive knew that the SUV was not stolen and did not pay the claim.  On the fire-damage claim, it determined that defendant's assertion that he did not set fire to the SUV was not a false statement unless the jury convicted him of the arson or theft charges.  In view of defendant's acquittal of those charges, the panel stated that "defendant could not be convicted of insurance fraud because he made no false statement of material fact that affected Progressive's liability to provide coverage for or pay the fire damage claim." In concluding that "defendant was wrongfully convicted of a crime he did not commit," the panel, in effect, entered a judgment of acquittal on the insurance-fraud charge.

We granted the State's petition for certification.  State v. Goodwin, 220 N.J. 42 (2014).

## II.

### A.

The State argues that the Appellate Division erred in two significant ways.  First, the State contends that the panel's decision stands for the erroneous proposition that "a

8

misrepresentation is only 'material' if it somehow prejudices the insurance company" -- that is, if the carrier "reimburse[s] defendant for his fraudulent claims." The State maintains that the question is not "whether an insured's false statements <u>actually</u> affected the insurer's liability" to pay a claim, but only whether "the person made false statements that <u>could have</u> affected the judgment" of a reasonable insurer in resolving the claim.

Second, the State asserts that the appellate panel wrongly concluded that, under <u>N.J.S.A.</u> 2C:21-4.6(a), a conviction of insurance fraud required that the jury first find defendant guilty of the predicate offense of arson or theft by deception.

### B.

In response, defendant counters that <u>N.J.S.A.</u> 2C:21-4.6(a) requires the State to prove that an insurance company suffered prejudice to secure a conviction for insurance fraud. Defendant emphasizes that although a false statement of "material fact" is undefined in <u>N.J.S.A.</u> 2C:21-4.6(a), the Legislature did not intend to broadly criminalize conduct that did not cause or threaten harm, a point he claims is made clear by the statute's de minimis provision. To the extent that the term "material" is ambiguous, defendant argues that a criminal "statute must be construed against the State."

Defendant contends that Progressive did not suffer

prejudice or incur liability from his false statement that the SUV was stolen because, in fact, the vehicle was not stolen and because the authorities knew where the SUV was located before the report of the theft. He also asserts that the jury verdict acquitting him of arson and theft by deception was a validation of the truthfulness of his statement that he did not set the SUV on fire. In sum, defendant urges that we affirm the Appellate Division and "hold that a misrepresentation to an insurance company that neither prejudices it, nor exposes it to liability, does not satisfy the material-misrepresentation element of insurance fraud."

### III.

Our primary task is to determine whether a defendant can be convicted of insurance fraud under N.J.S.A. 2C:21-4.6(a) even when an insurance carrier is not induced by a false statement to pay a damage claim. Stated differently, can a defendant be convicted of insurance fraud if the false statement is capable of influencing a reasonable examiner to pay a claim even though the carrier ultimately denies the claim?

The answer to this question depends on how we interpret the language of N.J.S.A. 2C:21-4.6(a), and in particular the words "a false . . . statement of material fact." "In construing the meaning of a statute, our review is de novo." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012) (citing

10

*Manalapan Realty, L.P. v. Twp. Comm.*, 140 N.J. 366, 378 (1995)).

Accordingly, the Appellate Division's interpretative conclusions are owed no deference, and we review the statute with "fresh eyes." *Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities*, 207 N.J. 489, 493 n.1 (2011).

We begin our analysis with the language of the statute.

## IV.

### A.

The insurance-fraud statute, N.J.S.A. 2C:21-4.6(a), in relevant part, provides:

> A person is guilty of the crime of insurance fraud if that person knowingly makes, or causes to be made, a false, fictitious, fraudulent, or misleading statement of material fact in, or omits a material fact from, or causes a material fact to be omitted from, any record, bill, claim or other document, in writing, electronically, orally or in any other form, that a person attempts to submit, submits, causes to be submitted, or attempts to cause to be submitted as part of, in support of or opposition to or in connection with: (1) a claim for payment, reimbursement or other benefit pursuant to an insurance policy, or from an insurance company.
>
> [(Emphasis added).]

Pruned to the language relevant to this case, the statute states that a defendant "is guilty of the crime of insurance fraud if [he] knowingly makes, or causes to be made . . . a false . . .

11

statement of material fact . . . as part of . . . a claim for payment . . . pursuant to an insurance policy." Ibid.

First, the statute contains no language stating that criminal liability is dependent on an insurance company actually relying on a false statement and suffering a loss. Cf. N.J.S.A. 2C:20-3 ("A person is guilty of theft if he unlawfully takes . . . movable property of another with purpose to deprive him thereof."). Rather, the statute merely requires the knowing submission of a false or fraudulent statement of material fact for criminal liability to attach.

Second, the term "material" is not defined in N.J.S.A. 2C:21-4.6 or in the definitional provision of the insurance-fraud statute, N.J.S.A. 2C:21-4.5. Unsurprisingly, the parties contest the meaning of a "material fact" as used in the statute. Defendant argues that a false statement of "material fact" is one that causes an insurance company to suffer prejudice or incur liability. Because Progressive did not pay the damage claim, defendant submits that he cannot be convicted of insurance fraud.

We believe that such a constricted interpretation of "material fact" is not consistent with either the common understanding or usage of that term or its intended purpose within the insurance-fraud statute. In construing N.J.S.A. 2C:21-4.6(a), we must "ascribe to the statutory words their

ordinary meaning and significance" and view those words in context, rather than in a vacuum, "so as to give sense to the legislation as a whole." State v. Crawley, 187 N.J. 440, 452 (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)), cert. denied, 549 U.S. 1078, 127 S. Ct. 740, 166 L. Ed. 2d 563 (2006).

Although "material" is not defined in the insurance-fraud statute, it is defined in another section of the Code of Criminal Justice (Code) -- the perjury statute. N.J.S.A. 2C:28-1(a) states that "[a] person is guilty of perjury . . . if in any official proceeding he makes a false statement under oath or equivalent affirmation . . . when the statement is material and he does not believe it to be true." (Emphasis added). The meaning of material is spelled out in N.J.S.A. 2C:28-1(b), which provides that a "[f]alsification is material . . . if it could have affected the course or outcome of the proceeding or the disposition of the matter." Thus, in the perjury context, to be material, a false statement does not have to actually corrupt the outcome of a proceeding; it is enough if the false statement has the potential to "affect[] the course or outcome of the proceeding." Ibid. Even under common-law perjury, the focus on materiality concerned "the potential effect of the false testimony on the outcome of the judicial proceeding." State v. Neal, 361 N.J. Super. 522, 533 (App. Div. 2003) (emphasis added) (quoting State v. Winters, 140 N.J. Super. 110, 118 (Cty. Ct.

13

1976)).  The 1971 comments to the perjury statute, N.J.S.A. 2C:28-1, explained that in defining "materiality," the Code's "formulation ('could have affected the course or outcome of the proceeding') is equivalent to the 'capable of influencing' rule found in many judicial opinions."  2 New Jersey Penal Code: Final Report of the New Jersey Law Commission § 2C:28-1, commentary at 271 (1971).

This definition of materiality finds support in other contexts.  For example, the federal false-statements statute, 18 U.S.C.A. § 1001(a)(2), makes it a crime for a person to "knowingly and willfully . . . make[] any materially false, fictitious, or fraudulent statement or representation" to a federal officer or body.  The common understanding among federal courts that have construed statutes criminalizing false statements, such as 18 U.S.C.A. § 1001, is that a material misrepresentation is one that "'has a natural tendency to influence, or was capable of influencing, the decision of' the decisionmaking body to which it was addressed."  Kungys v. United States, 485 U.S. 759, 770, 108 S. Ct. 1537, 1546, 99 L. Ed. 2d 839, 852 (1988) (quoting Weinstock v. United States, 231 F.2d 699, 701 (D.C. Cir. 1956)).

Consistent with the definition of material misrepresentation in our state perjury statute and the federal false-statements statute is one of the legal definitions of

14

"material" in Black's Law Dictionary 1124 (10th ed. 2014) --
"[o]f such a nature that knowledge of the item would affect a
person's decision-making" -- and the general definition of
"material" in Webster's New World College Dictionary 900 (5th
ed. 2014) -- "important enough to affect the outcome of a case,
the validity of a legal instrument."

We can fairly presume that the Legislature, when enacting
the insurance-fraud statute in 2003, was aware of the definition
of "material" false statement in the much earlier-enacted
perjury statute and in other contexts.  See In re Expungement
Petition of J.S., 223 N.J. 54, 75 (2015) ("[The Legislature] is
presumed to [be] 'thoroughly conversant with its own [prior]
legislation and the judicial construction of its statutes.'"
(third alteration in original) (quoting Nebesne v. Crocetti, 194
N.J. Super. 278, 281 (App. Div. 1984))).  It is highly
improbable that the Legislature intended an entirely different
meaning, one that would conflict with the broad objectives of
the statutory scheme criminalizing insurance fraud.

The Legislature set forth its purpose in criminalizing
insurance fraud in the statute itself.  The Legislature declared
that "[i]nsurance fraud is inimical to public safety, welfare
and order within the State of New Jersey" and that "[a]ll New
Jerseyans ultimately bear the societal burdens and costs caused
by those who commit insurance fraud," N.J.S.A. 2C:21-4.4(a);

15

that "[t]he problem of insurance fraud must be confronted aggressively by facilitating the detection, investigation and prosecution of such misconduct," N.J.S.A. 2C:21-4.4(b); and that the "prosecution of criminally culpable persons who knowingly commit or assist or conspire with others in committing fraud against insurance companies" is necessary "to punish wrongdoers and to appropriately deter others from such illicit activity," N.J.S.A. 2C:21-4.4(c).

Those objectives strongly suggest that the Legislature did not intend a crabbed definition of the term "false statement of material fact" -- one that would limit the scope of criminal prosecutions to only those cases in which a fraudster succeeded in inducing an insurance company to pay a false claim but not to those cases in which the fraudster was caught beforehand. In construing a statute, our paramount goal is to give effect to the Legislature's intent. DiProspero, supra, 183 N.J. at 492-93. The Legislature clearly did not intend for a person, who knowingly filed a false statement that could have reasonably affected the decision of an insurance carrier to pay a claim, to evade criminal prosecution merely because the carrier's thorough investigation revealed the fraud before money passed hands. The statute contains no provision stating that the carrier must rely on the misrepresentation to its detriment for criminal liability to attach. Regardless, investigations spurred by false

16

statements necessarily result in the expenditure of a carrier's resources that eventually lead to increased insurance costs passed on to consumers.

The provision in the insurance-fraud statute, allowing for an assignment judge to dismiss a charge based on a de minimis infraction, N.J.S.A. 2C:21-4.6(g), is not proof, as defendant suggests, that the Legislature intended that an insurance carrier must actually rely on a misrepresentation as a prerequisite for an insurance-fraud conviction. The de minimis provision acts as a safety valve, permitting dismissal of a charge that is too trivial to warrant prosecution. So, for example, if the conduct "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction," an assignment judge may dismiss a prosecution. N.J.S.A. 2C:2-11(b); see, e.g., State v. Nevens, 197 N.J. Super. 531, 534 (Law Div. 1984) (dismissing charge against defendant for taking five pieces of fruit from buffet-style restaurant after defendant had paid for lunch). A fraudulent reimbursement claim seeking more than $6000 for damage to a vehicle is not a trivial infraction.

The definition of material in Model Jury Charge (Criminal), "Insurance Fraud: Making False Statement (Claims)" (2010) is consistent with the way that term is defined in our state

17

perjury statute, in multiple federal statutes, in the common law, and in legal and general dictionaries. The Model Charge states that a misstatement

> is material if, when the statement was made, a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action. In other words, the statement of fact is material if it could have reasonably affected the decision by an insurance company to provide insurance coverage to a claimant or the decision to provide any benefit pursuant to an insurance policy or the decision to provide reimbursement or the decision to pay a claim.
>
> [Ibid. (emphasis added) (footnote omitted).]

As a whole, this Model Charge, given by the trial court, correctly defines a "material fact" under the insurance-fraud statute. However, going forward, the emphasized portion above is a more precise explication of the term "material" for purposes of this statute and should be solely used to avoid any confusion and to focus the jury's task as finder of fact.[2]

---

[2] The non-emphasized language in the model criminal jury charge comes from Longobardi v. Chubb Insurance Co. of New Jersey, a civil case defining "material" in a "Concealment or Fraud" clause in an insurance policy. 121 N.J. 530, 541-42 (1990). In Longobardi, the insurer declined coverage on a loss claim because of an insured's alleged material misrepresentations. Id. at 534-36. We explained that "[a]n insured's misstatement is material if when made a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action." Id. at 542. We do not disavow that interpretation in the context of that insurance-coverage case. However, in the context of the present criminal case, a single, precise definition of a statement of

18

B.

We reject the Appellate Division's conclusion that a conviction of insurance fraud required a predicate finding by the jury that defendant was guilty beyond a reasonable doubt of arson or theft by deception. The acquittals of arson and theft by deception reveal nothing more than that the State failed to meet the high standard of proof required in a criminal prosecution of those offenses. To find defendant guilty of knowingly making a false statement of material fact for reimbursement on an insurance claim did not require predicate convictions. Therefore, we see no inconsistency between the verdicts.

However, even if the verdicts were inconsistent, the acquittals are not a basis to attack collaterally the guilty verdict of insurance fraud. We accept inconsistent verdicts in our criminal justice system, understanding that jury verdicts may result from lenity, compromise, or even mistake. State v. Banko, 182 N.J. 44, 53 (2004) (citing State v. Grey, 147 N.J. 4, 11 (1996)). We therefore must resist the temptation to speculate on how the jury arrived at a verdict. Ibid. Rather, "we determine whether the evidence in the record was sufficient

---

material fact will give a greater degree of clarity in guiding the jury's task under the insurance-fraud statute.

19

to support a conviction on any count on which the jury found the defendant guilty." State v. Muhammad, 182 N.J. 551, 578 (2005).

Here, the false statements made and caused to be made by defendant concerning the theft of the SUV could have reasonably affected the decision by Progressive to pay the damage claim caused by the arson. As Progressive's investigator testified at trial, the lie that the SUV was stolen infected the credibility of the entire claim, including defendant's denials that he was not involved in setting the vehicle on fire. The decision whether to pay the claim was not dependent on the insurance carrier's ability to prove beyond a reasonable doubt that defendant was involved in the arson. Additionally, Progressive did not have to believe defendant's account given to Investigator Goldman that the reason for his lie was to cover up a romantic relationship. Progressive was entitled to infer that, once caught in a material lie, the remainder of his claims could not be believed. Based on the evidence, a rational jury was free to conclude that defendant's knowingly made false statements could have reasonably affected Progressive's decision whether to pay the claim.

V.

For the reasons expressed, we reverse the judgment of the Appellate Division, which vacated the jury verdict convicting defendant of second-degree insurance fraud. Defendant's

20

insurance-fraud conviction is therefore reinstated.  We remand to the trial court for entry of judgment consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.   A-20                          SEPTEMBER TERM 2014

ON APPEAL FROM        Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Appellant,

                v.

ROBERT GOODWIN (a/k/a ROBERT EBBS,
MICHAEL KINK, ROBERT JAMES, KENNY
ROBERTS, FRANK KIRK, MICHAEL KIRK,
MICHAEL ROBINSON, MICHAEL
ROBERTSON, ROBERT E. GOODWIN,
ROBERT KIRK, ROBERT GOODMAN,
MICHAEL GOODWIN AND RONALD
ROBINSON),

        Defendant-Respondent.



DECIDED          January 19, 2016
                 Chief Justice Rabner           PRESIDING
OPINION BY       Justice Albin
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY


| CHECKLIST | REVERSE/ REINSTATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |