**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2520-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JASON CROZIER, a/k/a
DOLAN JASON, JASON
DOLAN, JASON LEE DOLAN,
JASON L. GROZIER, and
JASEN L. DOLAN,

    Defendant-Appellant.

_____

Argued January 6, 2020 – Decided February 4, 2020

Before Judges Sabatino, Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 14-04-0042.

Emma R. Moore, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Emma R. Moore, of counsel and on the briefs).

Leslie-Ann Marshall Justus, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal,

Attorney General, attorney; Leslie-Ann Marshall Justus, of counsel and on the brief).

PER CURIAM

Defendant Jason Crozier appeals from a jury conviction and sentence for second-degree insurance fraud, N.J.S.A. 2C:21-4.6(a) (count one), third-degree attempted theft by deception, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:20-4 (count two), and fourth-degree identity theft, N.J.S.A. 2C:21-17(a) (count three). We affirm the convictions and remand to merge counts two and three into count one.

I.

On November 13, 2012, Barbara Day signed a durable power of attorney granting her sister, Patricia Dolan, authority to act on her behalf. Day suffered from Parkinson's disease which rendered her with a diminished mental capacity that prevented her from handling her financial affairs and being able to competently testify in judicial proceedings.

In December 2012, Dolan removed Day from Andover Nursing Home and began caring for her in Dolan's home in Vernon. At that time, Dolan's son— defendant—also resided with Dolan.

Day owned her own home in Hamburg. Dolan sought to fix the home, because it was in disrepair, and rent it out. In order to finance the work, Dolan contacted Betty Willis, Day's Prudential insurance agent, concerning Day's

investments. Day's investments included a fixed rate annuity and a whole life insurance policy with Prudential.

After Dolan provided Willis with her power of attorney, Willis suggested a withdrawal from Day's life insurance dividends because it would be nontaxable. Acting on Willis' advice, Dolan contacted the Prudential home office to withdraw funds from Day's whole life insurance policy.

On February 22, 2013, Prudential prepared and mailed a type-written withdrawal form for Day's life insurance policy in the amount of $5000. Dolan received the form, had Day sign it, and submitted it to Prudential.

On February 27, 2013, Day and Dolan, as power of attorney, indorsed the $5000 disbursement check issued by Prudential. The funds were used to repair Day's house.

On April 5, 2013, defendant posed as Day when partially filling-out and signing a withdrawal form for Day's annuity in the amount of $5500. The withdrawal form also included a request to change Day's address to Dolan's address in Vernon and named defendant as a contingent beneficiary.[1]

---

[1] Day had previously named two friends as the beneficiaries of the annuity. The record is not clear, but sometime before defendant sent the withdrawal form Dolan became the primary beneficiary on the annuity.

A-2520-17T4

Defendant subsequently called Prudential six times during the first twelve days of April 2013, impersonating Day each time. On April 4, prior to filling out the withdrawal form, defendant spoke with Prudential representative Joanna Mafaro and inquired about where to send the withdrawal forms and how much money was in Day's annuity. Following this, on April 9, he spoke to Prudential representative Christine Policasio to ask whether Prudential had received the withdrawal forms; defendant also changed Day's former telephone number to the landline at Dolan's residence. Defendant then confirmed that he "withheld ten percent of the taxes" for the withdrawal to avoid a tax penalty.

On April 11, defendant spoke to Prudential representative Ryan[2] to ask if Prudential had received the withdrawal forms and to inquire as to whether Day's home address was changed to Dolan's address. During a second call that same day, defendant confirmed to Prudential representative Rich De SanMartino that he was "changing the beneficiary" on the annuity to himself, while still posing as Day.

On April 12, defendant spoke to Prudential representative Janae Ryzack to determine if he had successfully changed Day's address. After Ryzack informed defendant that the "system ha[d] frozen," he became noticeably

---

[2] The representative's last name is inaudible on the recording.

A-2520-17T4

agitated. The call ended with Ryzack assuring defendant that she would call back "to confirm the address change."

Later that same day, defendant called Prudential representative Leslie McDuffy. When defendant asked to speak to a supervisor, McDuffy placed him on hold and contacted Mary Alice Lynn. While speaking with Lynn, McDuffy stated that "this clearly sounds like a man. He keeps saying he's a woman. I don't know." Lynn then told McDuffy that an internal alert was placed on Day's annuity account stating, "that the son is calling trying to change the address and process a withdrawal." Lynn then spoke with defendant and at this point the transcript ends. Subsequently, Dolan's power of attorney was faxed to Prudential on June 11, 2013. However, Prudential issued the check for $5500.

Unbeknownst to defendant, on April 11, 2013, the Prudential Special Investigation's Unit became involved after being alerted by the Annuity Business Unit. Day and Dolan were interviewed during its investigation. After hearing the six recordings of the calls placed to Prudential, Dolan identified the caller as her son, defendant.

Prudential referred the case to the State for prosecution. On March 19, 2014, Detectives Wendy Berg and Matthew Armstrong from the Division of

5

Criminal Justice interviewed Dolan under oath. Dolan confirmed that she was the only person with power of attorney over Day's assets.

Berg showed Dolan the withdrawal forms defendant sent to Prudential. Berg pointed out that Dolan was listed as the primary beneficiary, which Dolan acknowledged as correct, and that defendant was added as contingent beneficiary.[3] The forms also included Day's signature, approving defendant as a contingent beneficiary, which was witnessed by defendant's girlfriend.

Dolan stated that "[h]e had said to me that if I die, there has to be a second beneficiary. No, I never filled that out." Berg then asked Dolan if Day's signature looked authentic, to which Dolan replied, "I'm not sure about that. It does but it doesn't, you know what I mean?"

Berg then showed Dolan the request to withdraw $5500 from Day's annuity. Berg asked Dolan if "there [would] have been any reason that your sister would have tried to withdraw this amount out of her account," Dolan replied, "No." Dolan then re-confirmed that it was defendant's voice on each of the six calls placed to Prudential. Finally, Dolan stated that she "never gave

---

[3] During the interview, Berg mistakenly used the term "contingent power of attorney," when she clearly meant to say, "contingent beneficiary." This became relevant at trial as to whether Dolan understood Berg's questioning.

[defendant] permission to even attempt" to withdraw the $5500 and, to her knowledge, neither did Day.

On April 24, 2014, a State Grand Jury returned an indictment charging defendant with second-degree insurance fraud, third-degree attempted theft by deception, and fourth-degree identity theft. The case proceeded to a jury trial.

During trial, the State called Dolan. Dolan confirmed that she was interviewed under oath by Berg and Armstrong on March 19, 2014. However, on the stand Dolan claimed that Berg had "confused" her by referencing the beneficiary change form as a "contingent power of attorney."

Dolan further claimed that she did not understand which time period Berg was inquiring about. Instead, Dolan testified that she told Berg that she did not give defendant permission to request the $5500 annuity withdrawal because Dolan thought Berg was talking about a withdrawal defendant had attempted to make in 2014, not April 2013.

Dolan also claimed that she personally and as power of attorney wanted defendant to be named as a contingent beneficiary on the annuity. Moreover, Dolan testified that she wanted Day's address and telephone number changed on the annuity records at Prudential. She then claimed that she had asked defendant to make the $5500 withdrawal from Day's annuity and to make the phone calls

to Prudential to follow up on whether the company had received the withdrawal forms and other changes.

Dolan explained that she instructed defendant to handle these changes with Prudential because she got "very nervous" and she did not "know how to handle it." Accordingly, Dolan asserted that defendant was acting on her behalf when corresponding with Prudential. Dolan also testified that she was present while defendant made some of the calls, but not present for others.[4]

The court conducted a Gross[5] hearing under N.J.R.E. 104 because Dolan's trial testimony conflicted with her prior sworn statement to Berg and Armstrong. The prosecutor and defense counsel discussed and agreed upon specific redactions to Dolan's March 19, 2014 interview on the record. The redacted transcript was then admitted into evidence.

After the State rested, defendant moved for a judgment of acquittal. The trial court denied the motion.

Defendant first called Willis, Day's Prudential insurance agent. Willis testified that, at Dolan's request, she filled out a portion of the annuity withdrawal form by writing in Day's name, annuity account number, and social

---

[4] Dolan claimed that she can be heard on one of the recordings.

[5] State v. Gross, 121 N.J. 1 (1990).

security number; she also testified that she changed Day's address to Dolan's address. Willis then stated that she was the person who completed the top portion of the beneficiary change form detailing the owner information but did not include who the beneficiary would be changed to.

Willis testified she did not fill in the $5500 amount ultimately requested by defendant and that defendant called her to check the status of the requests, stating that he was calling "for his mother because she was at work." Willis explained she could not give defendant this information and referred him to the Prudential "home office" number.

Defendant next called Berg. She testified that, during her prior interview with Dolan, she misspoke by referring to the contingent beneficiary change form as a "contingent power of attorney." Instead, she meant to say "beneficiary." Berg acknowledged that she did not correct her mistake during the interview and that Dolan may have been confused by the incorrect references to the withdrawal form.

During summation, the prosecutor commented on Dolan's in-court testimony, namely, that she instructed defendant to call Prudential. The prosecutor framed the issue as "whether or not the defendant had permission to make those calls." Immediately after, he stated, "frankly [it] doesn't matter.

There's no such thing as permission."  Defense counsel did not object to these remarks.

A unanimous jury found defendant guilty of all three counts.  Defendant was sentenced to a five-year prison term on count one, a concurrent three-year term on count two, and a concurrent eighteen-month term on count three.  This appeal followed.

Defendant raises the following issues on appeal:

> POINT I
> THE TRIAL COURT ERRED IN ADMITTING THE BULK OF PATRICIA DOLAN'S PRIOR STATEMENT BECAUSE IT CONTAINED SUBSTANTIAL MATERIAL THAT EITHER WAS NOT INCONSISTENT WITH HER IN-COURT TESTIMONY, AND THEREFORE HEARSAY, OR WAS SPECULATIVE. (partially raised below)
>
> A. The Statements Admitted.
>
> B. Because Only a Small Portion of the Statement Was Actually Contradictory, the Balance Should Have Been Excluded as Hearsay.
>
> i. Patricia's Statements.
>
> ii. Detective Berg's Statements.
>
> C. Even if the Statement Were Not Hearsay, Much of It Was Speculative, Providing Independent Grounds for Exclusion.

D. Because the Content of the Inadmissible Hearsay and Speculation Featured Prominently in the State's Case Theory and Directly Countered the Defense's, Its Admission Was Clearly Capable of Producing an Unjust Result.

POINT II

THE ALLEGED MISREPRESENTATIONS DID NOT AND WERE NOT REASONABLY LIKELY TO ENCOURAGE PRUDENTIAL TO DISBURSE FUNDS. RATHER, ANY MISREPRESENTATIONS MADE DISBURSEMENT <u>LESS</u> LIKELY AND SO WERE NOT MATERIAL WITHIN THE MEANING OF N.J.S.A. 2C:21-4.6(a). THE TRIAL JUDGE'S DECISION NOT TO ENTER A JUDGMENT OF ACQUIT[T]AL WAS THEREFORE ERROR. (partially raised below)

A. The Purpose of the Calls – to Request Mailing Instructions and to Update Contact Information – Would Not Have Made the Grant of a Withdrawal Request More Likely.

B. In the Alternative, the Opening of a Fraud Investigation and Referral to Law Enforcement by Prudential as a Result of Obvious Falsity of the Statements at Issue Shows That the Misrepresentations Did Not Encourage Disbursement.

C. If a Misrepresentation Does Not Encourage the Remit of Funds, It Should Not Be Considered Material.

POINT III

THE PROSECUTOR'S STATEMENT IN CLOSING THAT WHETHER MR. CROZIER ACTED WITH PERMISSION WAS IRRELEVANT MISLED THE

11

JURY AS TO THE LEGAL STANDARD. EVEN IF PERMISSION WERE NOT RELEVANT TO INSURANCE FRAUD, IT IS RELEVANT TO THE CHARGES OF ATTEMPTED THEFT BY DECEPTION AND IDENTITY THEFT BECAUSE EACH REQUIRES PROOF THAT THE DEFENDANT'S PURPOSE WAS TO ACQUIRE PROPERTY OR BENEFITS. BECAUSE THIS STATEMENT, COMBINED WITH THE COURT'S FAILURE TO TAILOR THE JURY CHARGE TO ACCOMMODATE THE DEFENSE THEORY, PRESENTED A REAL RISK OF PREJUDICE, THE CONVICTIONS MUST BE REVERSED. (Not raised below)

> A. The Prosecutor's Statement of Law Was Inaccurate and Improperly Denigrated the Defense.

> B. The Comment, Combined with the Judge's Failure Either to Issue a Curative Instruction or to Tailor the Jury Instructions to Allow the Jury to Assess the Defense, Deprived Mr. Crozier of a Fair Trial.

POINT IV
COUNTS TWO (ATTEMPTED THEFT BY DECEPTION) AND THREE (IDENTITY THEFT) SHOULD HAVE MERGED INTO COUNT ONE (INSURANCE FRAUD). (Not raised below).

II.

Defendant argues that the court committed plain error by admitting the redacted transcript of Dolan's interview with Berg into evidence. He contends: (1) many of Dolan's statements were consistent with her in-court testimony and

would not be admissible under N.J.R.E. 803(a)(1); (2) Berg's assertions in the transcript were inadmissible hearsay; (3) "[t]he recapitulation of Detective Berg's assertions could no doubt have swayed the jury's assessment," due to her position as a law enforcement officer, citing Neno v. Clinton, 167 N.J. 573, 586 (2001); (4) "the admission of these assertions needed to be accompanied by a limiting instruction, informing the jury that while [Dolan's] statements could be considered for their truth, Detective Berg's could not since they were not prior inconsistent statements within" the scope of N.J.R.E. 803(a)(1); (5) many statements by Dolan lacked personal knowledge, as required by N.J.R.E. 602, 701, and 702, thus making them speculative; and (6) it was error to admit Dolan's statement that "[i]f [Day] did sign it, they probably told her it was entirely something different," because "[h]earing [his] own mother speculate that he had tricked his aunt into signing something could well have swayed the jury against her in-court testimony that he was acting in the family's interest"; and (7) the evidence against defendant was not overwhelming.

Defendant also explains his trial strategy "turned on the assertion that he acted with [Dolan's] permission and was not fraudulent in attempting to facilitate the disbursement of [Day's] funds." Conversely, defendant frames the State's argument as "he was guilty because he did not act with [Day's

13

permission]," as opposed to Dolan's.  Moreover, defendant contends Day was not called to testify for understandable reasons.  "In her absence, no one could testify with certainty whether she and [defendant] had ever spoken.  Yet, by improperly introducing the speculative sections of [Dolan's prior interview transcript], the State elicited precisely that testimony."

We review the admission of the redacted interview for plain error.  See State v. Macon, 57 N.J. 325, 337 (1971) (plain error means error that is "clearly capable of producing an unjust result" (quoting R. 2:10-2)).  "Plain error is a high bar and constitutes 'error not properly preserved for appeal but of a magnitude dictating appellate consideration.'"  State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting State v. Bueso, 225 N.J. 193, 202 (2016)).

Here, after the trial court conducted a Gross hearing and found Dolan's testimony to be inconsistent with her prior recorded interview by police, defendant reached an agreement with the State and consented to the admission of the redacted interview transcript without playing the tape recording.  Indeed, defense counsel stated, "I don't think it's disputed that Mrs. Dolan recanted a portion of her statement.  Pursuant to State v. Gross her recorded statement was admissible as substantive evidence."

Defendant's position on appeal invokes the doctrine of invited error. "The doctrine of invited error operates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error." Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 503 (1996). We find the doctrine applicable here. Thus, defendant "may not invoke the plain error rule" when he "endorses the action taken." Venuto v. Lubik Oldsmobile, Inc., 70 N.J. Super. 221, 229 (App. Div. 1961) (citing Schult v. H. & C. Realty Corp., 53 N.J. Super. 128, 136 (App. Div. 1958)). We therefore reject defendant's argument.

In addition, the trial court instructed the jury that the redacted transcript of Dolan's interview "is in evidence for a limited purpose, and that limited purpose is to whatever degree you determine in your jury deliberations, to whatever extent you believe it may affect or impact your assessment or evaluation of that witness's credibility. That is the sole purpose of that document." Following closing arguments, the judge reiterated the limited purpose of the redacted interview:

> Again, during the course of the trial I have ruled that certain evidence may be used only for a limited purpose. At the close of the trial certain documents were admitted into evidence. In particular, a transcript of a statement made by Patricia Dolan redacted, as noted earlier, has been admitted into evidence. But you

may only consider that statement -- that statement in your jury deliberations only to the extent that it may impact, if at all, your assessment of the credibility of that witness, and for no other purpose.

Moreover, the court abided by factors one through six and nine through fourteen outlined in <u>Gross</u>, 121 N.J. at 110, by further instructing the jury:

Evidence has been presented in the case showing that at a prior time Patricia Dolan, a witness called by the State, has said something or has failed to say something which is inconsistent with the witness's testimony at the trial. You may consider this evidence along with all the other evidence in the case. In deciding whether any such statement, if made, is credible, you should consider any relevant factors including Patricia Dolan's connection to and interest in the matter reported in her prior statement; the person or persons to whom she gave the statement; the place and occasion for giving the statement; whether Patricia Dolan was then in custody or otherwise the target of an investigation; the physical and mental condition of Patricia Dolan at the time; the presence or absence of other persons; the presence or absence and the nature of any interrogation; whether the sound recording contains all, or only a portion or a summary, of what Patricia Dolan said; the presence or absence of any motive to fabricate; the presence or absence of any explicit or implicit pressures, inducement, or coercion for making the statement; whether the use to which the authorities would put the statement was apparent or made known to Patricia Dolan; the inherent believability or lack of believability of the statement; whether the witness, Patricia Dolan, was confused, or whether she was misinformed as to certain facts during the course of her interview.

16

We discern no abuse of discretion by the trial court, much less plain error. Defendant's remaining arguments pertaining to admission of the redacted interview are of insufficient merit to warrant further discussion. R. 2:11-3(e)(2).

III.

Defendant argues the judge erred by denying his motion for judgment of acquittal as to the charge of insurance fraud. He contends that: (1) this case involves "an annuity rather than a false application for or claim against a typical insurance policy"; (2) he only asked Prudential for "basic information," such as "how could a form be sent in and [whether] Prudential [had] received it," which were not false statements of material fact; (3) by simply updating the contact information on the account he did not make a material misrepresentation within the meaning of N.J.S.A. 2C:21-4.6(a) since "there is no evidence that a change of address would encourage Prudential to make a payment"; (4) because his statement that he was Day was "obviously untrue," it was unreasonable for Prudential to rely upon it, citing State v. Goodwin, 224 N.J. 102 (2016); and (5) the legislative intent of N.J.S.A. 2C:21-4.6 and the inclusion of the de minimus provision in N.J.S.A. 2C:21-4.6(g) demonstrate "if a false statement, on its own strength, does not at least move the needle toward the wrongful distribution of a benefit, it is not the target of the statute." Accordingly, "[defendant's]

17

statements over the phone, which neither requested nor operated in favor of a payment, did not have a societal cost, and did not harm either the policy holder or the insurance company. . . . Therefore, they cannot coherently be said to have been the target of the statute." These arguments are procedurally barred pursuant to Rule 2:10-1.

Defendant essentially argues that the trial evidence did not show, beyond a reasonable doubt, that his actions violated the insurance fraud statute. This constitutes a weight-of-the-evidence argument.

An appellate court will "not consider a weight-of-the-evidence argument on appeal unless the appellant moved in the trial court for a new trial on that ground." State v. Fierro, 438 N.J. Super. 517, 530 (App. Div. 2015) (citing R. 2:10-1); State v. Perry, 128 N.J. Super. 188, 190 (App. Div. 1973), aff'd, 65 N.J. 45 (1974). For sake of completeness, we will address the issue.

Defendant's argument is substantively without merit. Insurance fraud is committed when a defendant "knowingly makes . . . a false, fictitious, fraudulent, or misleading statement of material fact in . . . any . . . claim . . . [made] orally . . . in connection with . . . a claim for payment . . . from an insurance company." N.J.S.A. 2C:21-4.6(a). The Legislature has defined "insurance company" as a corporation formed for the purpose of making any

18

kind or insurance or "to grant, purchase or dispose of annuities." N.J.S.A. 17:17-1(c). Accordingly, the insurance fraud statute applies to annuities.

The insurance fraud charge against defendant is based upon him (1) filing the withdrawal form for $5500 in Day's name; (2) making himself the contingent beneficiary of Day's annuity; (3) changing her address; and (4) calling Prudential, while posing as Day, in reference to the withdrawal forms.

The central premise of defendant's argument is that his statements to Prudential were not material because Prudential knew he was not Day and his statements did not convince Prudential to disburse the $5500. However, the statute makes clear that it also covers false claims. Here, defendant's statements to Prudential while posing as Day constituted false statements of material fact under the statute.

This conclusion is supported by Goodwin. There, the Court found that N.J.S.A. 2C:21-4.6(a) "contains no language stating that criminal liability is dependent on an insurance company actually relying on a false statement and suffering a loss. Rather, the statute merely requires the knowing submission of a false or fraudulent statement of material fact for criminal liability to attach." Goodwin, 224 N.J. at 111 (citation omitted). The Court also determined that the Legislature's

19

objectives strongly suggest that [it] did not intend a crabbed definition of the term "false statement of material fact"—one that would limit the scope of criminal prosecutions to only those cases in which a fraudster succeeded in inducing an insurance company to pay a false claim but not to those cases in which the fraudster was caught beforehand.

[Id. at 114.]

Additionally, the Court explained that "[t]he de minimis provision acts as a safety valve, permitting dismissal of a charge that is too trivial to warrant prosecution." Id. at 115. However, "[a] fraudulent reimbursement claim seeking more than $6000 for damage to a vehicle is not a trivial infraction." Ibid. The Court ultimately held that "a rational jury was free to conclude that defendant's knowingly made false statements could have reasonably affected [the insurance provider]'s decision whether to pay the claim." Id. at 117.

Here, defendant's false statements and fraudulent withdrawal forms were aimed at deceiving Prudential in order to improperly receive disbursement of $5500 from Day's annuity. While Prudential did not ultimately disburse the funds to defendant, the statute does not require the State to show reliance on the part of the insurance company. Id. at 111. Finally, a $5500 false claim is not a "trivial infraction" excused by the statute's de minimis provision. See id. at 115.

20

We next address defendant's argument that the prosecutor made improper statements during his closing argument and the trial court erred by failing to give a curative instruction. Defendant claims the following statements by the prosecutor were improper:

> The only disagreement [between the State's and defendant's arguments] seems to be about whether or not the defendant had permission to make those calls, which frankly doesn't matter. There's no such thing as permission. An individual can't give another person permission to make a withdrawal from another's annuity, you have to have Power of Attorney.

Defendant contends that if he had permission from Dolan to contact Prudential it would defeat the mens rea element of the offenses. More specifically, defendant argues the prosecutor's statements were "particularly problematic" because attempted theft by deception and identity theft both "explicitly require proof that a defendant intends to secure themselves a benefit."

We recognize that "[p]rosecutors may not make inaccurate factual or legal assertions during summation, and they must confine their remarks to evidence revealed during trial, and reasonable inferences to be drawn from the evidence." State v. Rodriguez, 365 N.J. Super. 38, 48 (App. Div. 2003) (citing State v. Smith, 167 N.J. 158, 178 (2001)).

Our Supreme Court has stated:

> Reversal is justified when the prosecutor does not abide by the above strictures, and the conduct was "so egregious as to deprive defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437 (2007) (quotations omitted). In determining whether a prosecutor's comments meet the "so egregious" standard, a reviewing court must "consider the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." State v. Timmendequas, 161 N.J. 515, 575 (1999). "Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial. Failure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made." Id. at 576 (citation omitted).
>
> [State v. Echols, 199 N.J. 344, 360 (2009).]

Applying these principles to the prosecutor's statements, we do not find the prosecutor's comments were so egregious that defendant was deprived of a fair trial. No objection was made to the prosecutor's comments. The trial court advised the jury in both the preliminary instructions and the final jury charge that comments by the attorneys were not evidence and are not controlling. The court also instructed the jury to follow its instructions as to the law to be applied.

Additionally, and contrary to defendant's argument, the court did provide a jury charge that was tailored to the defense's theory of the case. Although the

court did not explicitly comment on whether Dolan gave defendant permission to contact Prudential, it was implied in the jury charge.

On the stand, Dolan claimed that she was confused about the dates that Berg said defendant was attempting to withdraw funds from, and make changes to, the annuity. She explained that this was why she initially told Berg that she did not give permission to defendant to contact Prudential when, in fact, she did. Accordingly, the court instructed the jury to consider whether Dolan was "confused" when making her prior statement; this gave credence to the defense's theory that Dolan provided defendant with permission to contact Prudential.

Notably, when questioned by the court regarding the proposed jury charges, defense counsel stated, "I have no other additions, corrections, or modifications. We have reviewed it extensively this morning and have I think made all the appropriate corrections that need to be made."

Given these facts, we are unpersuaded that the prosecutor's comments and the failure to provide further jury instructions deprived defendant of a fair trial.

V.

Finally, defendant contends that his convictions for attempted theft by deception and identity theft should be merged into his conviction for insurance fraud. We agree.

23

A defendant may not be convicted of more than one offense if "[o]ne offense is included in the other." N.J.S.A. 2C:1-8(a)(1). An offense is included in another if "[i]t is established by proof of the same or less than all the facts required to establish the commission of the" other offense. N.J.S.A. 2C:1–8(d)(1). Our Supreme Court has explained that the preferred and more flexible standard adopted in State v. Davis, 68 N.J. 69, 81 (1975) entails:

> analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
>
> [State v. Hill, 182 N.J. 532, 543 (2005) (quoting State v. Diaz, 144 N.J. 628, 638 (1996)).]

Applying those factors to the evidence demonstrates that counts two and three should be merged into count one for sentencing purposes. Defendant's actions were part of a single scheme or episode. Each offense occurred at the same time and location. They each involved filling out and submitting the same withdrawal forms and impersonating Day during the same six phone calls to Prudential, with the intent to improperly withdraw funds from her annuity. The same evidence was necessary to prove each count. Because "the evidence relied

24

upon by the State to support the . . . convictions was identical[,] [m]erger is required." State v. Streater, 233 N.J. Super. 537, (App. Div. 1989) (citations omitted).

Accordingly, we remand the matter to the trial court for entry of an amended judgment of conviction that merges the convictions for attempted theft by deception (count two) and identity theft (count three) into the conviction for insurance fraud (count one). In all other respects, the judgment is affirmed.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION