NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0431-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEPHANIE MARTINEZ,
a/k/a STEPHANINE G.
MARTINEZ,

    Defendant-Appellant.

_____

> Argued December 9, 2024 – Decided January 23, 2025
>
> Before Judges Sabatino, Gummer, and Jacobs.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 22-02-0395.
>
> Margaret McLane, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Margaret McLane, of counsel and on the briefs).
>
> Matthew E. Hanley, Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Essex County Prosecutor, attorney; Matthew E. Hanley, of counsel and on the brief).

The opinion of the court was delivered by

JACOBS, J.S.C. (temporarily assigned)

Defendant Stephanie Martinez appeals her convictions following a jury trial for passion/provocation manslaughter, weapons offenses, theft, and fraudulent use of a credit card. The central issue is whether the jury charge and verdict sheet should have provided for self-defense to serve as a complete justification to homicide rather than piecemeal to murder and each of the lesser-included charges considered by the jury. Because our law requires that self-defense, once found by a jury, serves as a complete defense to all categories of homicide, we reverse defendant's conviction for passion/provocation manslaughter and weapons offenses and remand the remaining convictions for resentencing consistent with our opinion.

For reasons elaborated in the published portion of this opinion, we reverse defendant's conviction for passion/provocation manslaughter and weapons offenses. In the unpublished portion of this opinion, we address defendant's arguments regarding other aspects of the trial that are largely rendered moot, affirmed, or remanded for resentencing.

I.

On February 16, 2022, an Essex County grand jury returned Indictment No. 22-02-395, charging defendant with first-degree murder, N.J.S.A. 2C:11-

3(a)(1), (2) (count one); first-degree felony murder in the course of a robbery, N.J.S.A 2C:11-3(a)(3) (count two); first-degree robbery, N.J.S.A. 2C:15-1 (count three); first-degree kidnapping, N.J.S.A. 2C: 13-1(b)(1) (count four); third-degree theft of movable property (motor vehicle), N.J.S.A. 2C:20-3(a) (count five); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (counts six (a crowbar) and eight (a sharp object)); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (counts seven and nine); fourth-degree credit card theft, N.J.S.A. 2C:21-6(c)(1) (count ten); and third-degree fraudulent use of a credit card, N.J.S.A. 2C:21-6(h) (count 11).

All charges relate to the homicide of Raul Rios and events that began on September 28, 2021, extending into the early morning hours of the following day. The pertinent facts and procedural history are summarized from the record. Trial was held in April 2023, concluding with defendant's acquittal of murder, felony murder, robbery, and kidnapping. Defendant was convicted of passion/provocation manslaughter as a lesser-included offense of murder, theft of movable property, credit card theft, weapons offenses, and fraudulent use of a credit card.

In July 2023, the trial court sentenced defendant to seven years imprisonment, 85% without parole pursuant to the No Early Release Act

(NERA), N.J.S.A. 2C:43-7.2, for the passion/provocation manslaughter conviction. Concurrent to that term, the trial court imposed a sentence of five years for the motor vehicle theft conviction; eighteen months for each of the unlawful possession convictions; eighteen months for the conviction of credit card theft; and three years for fraudulent use of a credit card. The court merged each of the possession of a weapon for unlawful purpose convictions with the passion/provocation manslaughter conviction.

At trial, defendant testified she had known Rios for approximately six years. They were never romantically involved, though Rios expressed interest in dating about two years before the incident. Defendant consistently declined Rios's advances, stating she was not interested in a romantic relationship. Undeterred, Rios was persistent and began showing up unannounced at defendant's home to pursue her. On the night in question, defendant claimed that Rios, intoxicated on cocaine, PCP, and alcohol, threatened to kill her and then himself, wanting to have sex with her in his vehicle before their mutual demise. During the sexual assault and allegedly in fear for her life, defendant stabbed Rios several times in the neck with a knife, severing his jugular vein. Then, in a purported effort to calm herself, defendant drove to a local store in Rios's vehicle and used Rios's credit card to buy cigarettes and a cup of coffee.

Following the stabbing and perhaps when he was already deceased,

4

Rios's arm twitched. Contending she was startled by this movement, defendant struck Rios two or three times with a crowbar. Video footage depicted defendant removing Rios's lifeless body from his vehicle. Defendant then drove away, leaving Rios's body in the parking lot of another store.

Central to this appeal is the jury charge and verdict sheet. The verdict sheet listed four categories of homicide: murder, passion/provocation manslaughter, aggravated manslaughter, and reckless manslaughter. As to each category of homicide, the jury was separately asked, "Did the State disprove, beyond a reasonable doubt, the applicability of self-defense as to [each category of homicide]?" After answering the first self-defense inquiry in the negative and thereby acquitting defendant of murder, the jury was next directed by the verdict sheet to consider an identically worded inquiry pertaining to passion/provocation manslaughter. For that offense, the jurors determined that the State had disproved, beyond a reasonable doubt, the applicability of self-defense and found defendant guilty. Having reached a verdict on passion/provocation manslaughter, the verdict sheet directed the jurors to bypass consideration of aggravated manslaughter and reckless manslaughter and proceed directly to felony murder, for which defendant was acquitted. Thereafter, the jurors considered the remaining charges, returning the verdicts referenced above.

5

II.

Defendant now appeals, arguing that the jury's finding of self-defense as to murder amounts to an acquittal on all homicide charges, including the passion/provocation charge for which she was found guilty. The State argues the jury's verdicts, while inconsistent, should be affirmed.

Besides this first and most salient issue, defendant advances six additional arguments, including three not raised at the trial level.

POINT I

THE PASSION/PROVOCATION MANSLAUGHTER CONVICTION MUST BE VACATED AND A JUDGMENT OF ACQUITTAL ENTERED BECAUSE THE JURY FOUND THAT THE STATE DID NOT DISPROVE SELF-DEFENSE. (Not Raised Below)

POINT II

THE COURT ERRED IN REFUSING TO INSTRUCT ON THE REQUESTED RELATED OFFENSE OF AGGRAVATED ASSAULT.

POINT III

DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THE MEDICAL EXAMINER'S TESTIMONY IMPROPERLY EXCEEDED THE SCOPE OF HIS EXPERTISE.

POINT IV

THE COURT ERRED IN FAILING TO INSTRUCT THE JURY ON HOW TO CONSIDER

6

DEFENDANT'S FAILURE TO REPORT HER SEXUAL ASSAULT.  (Not Raised Below)

POINT V

THE FAILURE TO INSTRUCT THE JURY THAT SELF-DEFENSE APPLIED TO THE WEAPONS-POSSESSION CHARGES REQUIRES REVERSAL OF THESE CONVICTIONS.  (Not Raised Below)

A. The Court Erred In Failing To Instruct The Jury On Possession Of The Knife In Self-Defense.

B. The Court Erred In Failing To Instruct The Jury That Defendant Could Lawfully Possess The Crowbar In Public For Self-Protection.

POINT VI

THE THEFT CONVICTION MUST BE REVERSED BECAUSE THE JURY DID NOT SPECIFY THE AMOUNT STOLEN.  (Not Raised Below)

POINT VII

MULTIPLE SENTENCING ERRORS RENDER DEFENDANT'S SENTENCE EXCESSIVE.

A.

The Jury Charge, Verdict Sheet and Inconsistent Verdicts

First, we consider facially inconsistent verdicts due to the jury's finding that self-defense was established as to murder but not passion/provocation manslaughter.  Generally speaking, inconsistent verdicts are not disturbed, and

7

the appellate court determines only "whether the evidence in the record was sufficient to support a conviction on any count on which the jury found the defendant guilty." State v. Goodwin, 224 N.J. 102, 116 (2016) (quoting State v. Muhammad, 182 N.J. 551, 578 (2005)); see also State v. Banko, 182 N.J. 44, 54 (2004). Where there is sufficient evidence to support a particular verdict, it is preserved, even if inconsistent with verdicts on other counts in a given indictment. Here, however, the inconsistency is untenable because reconciliation would violate a countervailing precept in our jurisprudence that "[s]elf-defense is a complete defense to homicide." State v. Macchia, 253 N.J. 232, 252 (2023).

For a claim of self-defense to prevail under these circumstances, a jury must find that the defendant had an honest and reasonable belief that deadly force was necessary to protect herself from serious bodily harm or death, and that defendant did not provoke the attacker. N.J.S.A. 2C:3-4(a) and (b)(2)(a); State v. Kelly, 97 N.J. 178, 197 (1984). Whether the defendant's belief was reasonable is measured by what the jury, not the defendant, considers reasonable under an objective standard. State v. Handy, 215 N.J. 334, 356-57 (2013). Clear and correct jury instructions are essential to a defendant's right to a fair trial. State v. Rodriguez, 195 N.J. 165, 175 (2008). Certain jury instructions are so crucial to a jury's deliberations that error is presumed to be

reversible.  State v. McKinney, 233 N.J. 475, 495 (2015); State v. Jordan, 147 N.J. 409, 422 (1997).  The instructions must plainly spell out how the jury should apply the law to the facts of the case.  State v. Concepcion, 111 N.J. 373, 379 (1988).  Our courts have long held that it is plain error for the trial court to fail to instruct the jury that in all instances of homicide self-defense is a complete justification for murder as well as manslaughter offenses.  State v. O'Neil, 219 N.J. 598, 601 (2014).  "[A] person who acts in self-defense and 'kills in the honest and reasonable belief that the protection of his own life requires the use of deadly force' cannot be convicted of murder, aggravated manslaughter, or manslaughter."  Ibid. (quoting State v. Rodriguez, 195 N.J. 165, 172-74 (2008)).

Here, the trial court charged the jury that:

> The State has the burden to disprove beyond a reasonable doubt the defense of self-defense.  If the State carries its burden, then you must allow the defense [sic].  If the defense [sic] does not [] satisfy this burden, then you must find the defendant not guilty of murder and passion provocation manslaughter and go on to consider whether defendant should be convicted of the crimes of aggravated or reckless manslaughter.

This charge misstates the law.  Instead, the jury charge should have instructed that if the jury were to find the State failed to disprove self-defense beyond a reasonable doubt as to any of the homicide offenses, then the jury should so

designate and, accordingly, find defendant not guilty of all homicide offenses. The jury would then move on to consider the remaining charges, with the exception of the weapons offenses, since those counts are inextricably linked to each other and the homicide offenses. Because this fundamental precept was not conveyed in the jury charge or verdict sheet, the jury invalidly found defendant to have met the self-defense test for murder but not passion/provocation manslaughter. Based on those incompatible findings, we are compelled to reverse defendant's conviction for passion/provocation manslaughter.

The Model Criminal Jury Charges do not include a sample jury verdict sheet for this relatively common scenario, nor any helpful commentary to guide judges and counsel. In this appeal, we reiterate that when self-defense is established as to one category of homicide, it applies to all other categories of homicide charged or otherwise permitted for consideration as lesser-included offenses. Thus, to ensure trial courts properly implement this precept and in the interests of justice, we recommend that the Model Criminal Jury Charge Committee consider creating a verdict sheet template consistent with our case law for use in all cases where self-defense is considered for more than one category of homicide.

A-0431-23

We reverse defendant's conviction for passion/provocation manslaughter. Defendant's remaining points on appeal are addressed in the unpublished portion of this opinion.

B.

In this unpublished portion of the opinion, we address defendant's remaining claims.

Declining to Charge Aggravated Assault

In her second argument, defendant contends the trial court erred in rejecting defense counsel's application to allow the jury to consider the lesser-related charge of aggravated assault. Aggravated assault, defined by N.J.S.A. 2C:12-1(b), comprises thirteen separate categories. In her oral application, defense counsel did not specify which category of aggravated assault she wished to have charged or whether she sought a second or third degree charge.

Under N.J.S.A. 2C:12-1(b)(7), a person is guilty of aggravated assault if one:

> [a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury[.]
>
> [N.J.S.A. 2C:12-1(b)(7).]

In declining to so charge, the trial court found no rational basis existed for that charge where the testimony of defendant attested that her intent was to kill Rios to save her own life, and the nature and number of wounds showed an intent to kill rather than an intent to cause serious bodily injury.

> THE COURT: Regarding the – defense counsel's request to charge a lesser related offense of aggravated assault, I'm not going to charge that. "The trial court may instruct the jury on a related offense only when defendant requests or consents to a related offense charge and" – with emphasis – "there's a rational basis in the evidence to sustain the related offense." In this case, the charged crime is murder. The purpose of the proposed jury charge of aggravated assault is not a lesser included charge of murder but a lesser related charge potentially to murder. Aggravated assault is not charged in this indictment. This indictment charges murder, felony murder and robbery among other charges. Based on the evidence adduced at this trial, mainly the testimony of the medical examiner and the testimony of the defendant that her situation was kill or be killed, and the nature – and the number of the wounds, the [c]ourt finds no rational basis for a verdict for the [c]ourt, rather, to charge aggravated assault. The evidence clearly indicates that the defendant's intention was to kill the victim or be killed, as she testified, which is also consistent of the testimony of the medical examiner and again, the nature and number of the wounds.

Unlike lesser-included offenses, lesser-related offenses "are those that 'share a common factual ground, but not a commonality in statutory elements, with the crimes charged in the indictment.'" State v. Alexander, 233 N.J. 132, 144 (2018) (quoting State v. Thomas, 187 N.J. 119, 132 (2006)). However,

12                                                                      A-0431-23

instructing the jury on related offenses that are not charged in the indictment raises "constitutional concerns because criminal defendants have rights to a grand jury presentment and fair notice of criminal charges against them." Ibid. Therefore, a trial court "may instruct the jury on a related offense only when 'the defendant requests or consents to the related offense charge, and there is a rational basis in the evidence to sustain the related offense.'" Id. at 144-45 (quoting Thomas, 187 N.J. at 133).

When a defendant requests a lesser-related charge, the court's determination of whether to permit the charge shifts to the facts of the case, not the elements of the charge. State v. Doss, 310 N.J. Super. 450, 455 (App. Div. 1998). When a defendant makes a request and the State objects, the court should evaluate the facts presented at trial to ensure there is a rational basis for the jury to reject the greater charge and instead convict on the lesser charge. N.J.S.A. 2C:1-8(e). The inquiry becomes whether the jury would have a rational basis for accepting the proposed theory of a case, not whether the jury is likely to accept the defendant's theory. State v. Mejia, 141 N.J. 475, 489 (1995). It is not appropriate for a court to reject a lesser charge because the State believes the evidence warrants a conviction on the higher charge and it would rather risk an outright acquittal than permit the jury to convict solely on the lesser charge. State v. Freeman, 324 N.J. Super. 463, 469 (App. Div.

1999).  However, our courts have recognized that "prosecutorial charging discretion includes the authority to decline to prosecute defendant for an offense that defendant admits having committed, if that admission is inconsistent or incongruent with the theory of the State's case."  State v. Smith, 136 N.J. 245, 253 (1994).  The "primary obligation [of the trial court] is to see that justice is done, and that a jury is instructed properly on the law and on all clearly indicated lesser-included offenses, even if at odds with the strategic considerations of counsel."  State v. Garron, 177 N.J. 147, 180 (2003).

Appellate defense counsel advances a hypothetical in which the jury could have reasonably resolved any doubt against a conviction for passion/provocation manslaughter by instead considering whether defendant committed aggravated assault in hitting Rios with the crowbar.  The State argues that had the trial court included an aggravated assault charge, the jury could have found defendant guilty of both murder and aggravated assault, even though the crowbar attack contributed to the cause of death.  Given the State's theory that this was a two-stage homicide, we conclude there was a rational basis to charge aggravated assault.

Notwithstanding this conclusion, because we hold defendant is entitled to an acquittal for the homicide charge, she cannot be retried for aggravated assault in any of its separate categories.  N.J.S.A. 2C:1-10(a)(1) provides:

A-0431-23

A prosecution of a defendant for a violation of a different provision of the statutes or based on different facts than a former prosecution is barred by such former prosecution under the following circumstances:

a. The former prosecution resulted in an acquittal or in a conviction as defined in section 2C:1-9 and the subsequent prosecution is for:

(1) Any offense of which the defendant could have been convicted on the first prosecution[.]

[Emphasis added.]

Further, N.J.S.A. 2C:1-8(b) enforces the requirement that related offenses based on the same conduct or arising from the same episode be disposed of in a single trial.

[A] defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.

The restriction on multiple trials provided under this statute is broader and more protective than double jeopardy limitations. See State v. Veney, 409 N.J. Super. 368, 382, 384 (App. Div. 2009). In Veney, the State charged the defendant with the most serious charge among a number of weapons possession crimes arising out of a search of a car, namely, felon in possession of a firearm. Ibid. After the defendant's acquittal on that charge, the State

15

charged the defendant with possession of a firearm without a permit. Ibid. The court held that while the two charges were comprised of different elements, thereby satisfying the "same-elements" or "Blockburger" test so that double jeopardy protection would not apply, the procedure was a violation of N.J.S.A. 2C:1-8(b) and dismissed the subsequent charge. Ibid.; see also Blockburger v. United States, 284 U.S. 299 (1932).

In the same vein, our case law holds that a jury's verdict of acquittal bars any further exposure to the criminal process based on the same conduct. State v. Vogt, 342 N.J. Super. 368, 384 (App. Div. 2001). Our Supreme Court has also held that an acquittal of one offense bars retrial for a separate offense when the prosecution concedes the proofs for each would be identical. State v. DeLuca, 108 N.J. 98, 101, 108-09 (1987).

Here, the aggravated assault claim arose from the same conduct and sequence of events that gave rise to the former prosecution for homicide, weapons, theft, and fraud offenses. Defendant's use of the crowbar was known to the prosecution prior to trial from both the State's investigation and video evidence. The authority to charge defendant with aggravated assault was within the jurisdiction of the same court that heard defendant's first trial. As such, the prosecution is barred from charging defendant with aggravated assault in a second trial pursuant to N.J.S.A. 2C:1-8(b).

A-0431-23

Moreover, N.J.S.A. 2C:1-10(a)(1) also provides protection to defendant by barring subsequent prosecution for aggravated assault, where the former prosecution resulted in an acquittal and the subsequent prosecution of aggravated assault is an offense for which defendant could have been convicted on the first prosecution. Here, the jury's verdict of acquittal on murder bars any further exposure to the criminal process based on the same conduct. See Vogt, 342 N.J. Super. at 384.

C.

Applicability of Self-Defense to Weapons Charges

We next consider defendant's arguments regarding the weapons charges, including whether reversal of the passion/provocation manslaughter conviction requires reversal of the weapons convictions and whether the trial court plainly erred in not instructing the jury that self-defense applied to the unlawful possession of a weapon charges.

The plain error standard generally applies to purported errors or omissions not brought to the trial court's attention. The standard requires a determination of whether there was error and whether that error or omission was "clearly capable of producing an unjust result," Rule 2:10-2; that is, whether there is "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached," State v. Dunbrack, 245 N.J. 531,

544 (2021). "To determine whether an alleged error rises to the level of plain error, it 'must be evaluated in light of the overall strength of the State's case.'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

Here, defendant acknowledges that both the verdict sheet and trial court instructed the jury that self-defense applied to the possession of a weapon for unlawful purpose counts (seven and nine). However, defendant notes that neither the verdict sheet nor the jury instruction offered self-defense for consideration as to the unlawful possession counts (six and eight). Defendant argues failure to offer self-defense for consideration on the unlawful possession counts was plain error. Defendant further argues that because the jury acquitted her of murder on grounds of self-defense, so too must self-defense apply to both the unlawful possession and unlawful purpose charges, resulting in an automatic reversal of those convictions. We agree.

As to the unlawful possession of weapon charges, defendant relies on State v. Oguta, in which we held that omission of a self-defense instruction was reversible error where the defendant normally carried a pocketknife for cutting up boxes for work but then made "spontaneous use of [the knife] in response to an immediate danger." 468 N.J. Super. 100, 109 (App. Div. 2021) (quoting State v. Kelly, 118 N.J. 370, 385 (1990)). In Oguta, we ruled that the

trial court should have instructed the jury that self-defense could be a justification to the charge of unlawful possession of a knife. Id. at 111.

With respect to the crowbar, defendant draws on the Supreme Court's decision in State v. Montalvo, in which the Court held that the defendant "had a constitutional right to possess [a] machete in his home for his own defense," and that "[b]ecause the [trial] court's instruction did not convey this principle, the instructions were erroneous." 229 N.J. 300, 323 (2017); see also District of Columbia v. Heller, 554 U.S. 570, 592 (2008) (finding the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation"). Defendant argues further that although Montalvo was limited to the possession of a weapon inside one's home, the United States Supreme Court's holding in Bruen is not limited to one's home, but also permits possession in public. N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 33 (2022). Accordingly, defendant argues that just as the Court found in Montalvo that a jury should be instructed that the possession of a weapon for self-defense inside a home is lawful, the jury here should also have been instructed that possession of a weapon for self-defense outside a home is similarly lawful.

Oguta, Montalvo, and Bruen factually are not directly on point in that they entail an actor consciously possessing a weapon for a valid purpose over

19

an extended period of time, either inside or outside the home. No extended period of possession is involved in this case. Instead, it is a situation of spontaneity. Our Court held in Kelly that "[a]lthough self-defense involves a lawful use of a weapon, it does not justify the unlawful possession of the weapon under section 5d except when a person uses a weapon after arming himself or herself spontaneously to meet an immediate danger." 118 N.J. at 386; see also State v. Harmon, 104 N.J. 189, 208-09 (1986).

Here, the record shows that in the first instance, defendant spontaneously grabbed a knife found in Rios's vehicle and stabbed him while he was in the midst of a sexual assault. In the second instance, defendant spontaneously took hold of Rios's crowbar and hit Rios with it after she saw him move. Both of these acts of momentary possession and spontaneous action to repel a perceived immediate danger are consistent with self-defense, a defense the jury found valid in the case of murder. Because defendant's possession and use of both weapons were inextricably linked to each other and encompassed those acts of lawful self-defense, by logical extension, defendant's convictions for all associated weapons counts must be reversed. The State has not dispelled the logic of this conclusion.

20

D.

The Value of Rios's Vehicle as it Relates to the Theft Charge

As with the two preceding arguments, defendant did not make this argument to the trial court. We therefore again apply the plain error standard. R. 2:10-2. Defendant argues that the trial court did not ask the jury to return a finding on the element of the amount involved in the theft of Rios's vehicle for which she was convicted under count five, third-degree theft of movable property. Defendant concedes that the court properly instructed the jury as to all elements of the offense; however, she submits that the verdict sheet did not specify the amount involved in the theft. Defendant argues the "amount of the theft constitutes an element of the offense and to be proven by proof beyond a reasonable doubt[.]" State v. D'Amato, 218 N.J. Super. 595, 606-07 (App. Div. 1987) (citing N.J.S.A. 2C:20-2(b)(4)).

The record reflects that the administered jury charge mirrored the model criminal jury charge. Specifically, the trial court instructed the jury, "the State alleges that the movable property taken . . . is a silver 2001 Toyota Forerunner SUV" and "theft is a crime of the third degree if the amount involved exceeds $500 but is less than $75,000, the property stolen is a firearm, motor vehicle, vessel"

21

The record is undisputed that the theft concerned a motor vehicle. The vehicle's precise value is not necessary for the third-degree grading, as it was within the jury's ken to determine whether the value of the Toyota Forerunner SUV, whose condition they were able to view from video played at trial, exceeded $500. We conclude there was no plain error as to this count in the indictment.

E.

<u>Sentence Imposed</u>

At sentencing, the trial court imposed concurrent terms of seven years, subject to NERA, for passion/provocation manslaughter, five years for third-degree theft, three years for fraudulent use of a credit card, and eighteen months for the unlawful possession and credit card offenses. The court found aggravating factors 3 (risk to commit another offense, N.J.S.A. 2C:44-1(a)(3)), and 9 (the need to deter, N.J.S.A. 2C:44-1(a)(9)). The court also found mitigating factors 3 (strong provocation, N.J.S.A. 2C:44-1(b)(3)), 4 (substantial grounds tending to excuse, N.J.S.A. 2C:44-1(b)(4)), 5 (the victim's conduct induced the offense, N.J.S.A. 2C:44-1(b)(6)), 7 (no history of prior convictions, N.J.S.A. 2C:44-1(b)(7)), 8 (defendant's conduct was the result of

22

circumstances unlikely to recur, N.J.S.A. 2C:44-1(b)(8)), and 9 (defendant's character is unlikely to reoffend, N.J.S.A. 2C:44-1(b)(9)).[1]

An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse-of-discretion standard. State v. Torres, 246 N.J. 246, 272 (2021); see also State v. Trinidad, 241 N.J. 425, 453 (2020) (an appellate court reviews a sentence "in accordance with a deferential standard."). The appellate court should defer to the sentencing court's factual findings and should not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014). The deferential standard of review applies, however, "only if the trial judge follows the Code and the basic precepts that channel sentencing discretion." Trinidad, 241 N.J. at 453 (quoting Case, 220 N.J. at 65).

Defendant argues that aggravating factors 3 and 9 were improperly applied because there is no risk of reoffending and no need for deterrence. In imposing sentence, the trial court stated, "there's always the risk of another offense" and there exists a "need to deter this defendant and others from criminal activity." Defendant contends that she is entitled to an "individualized consideration during sentencing." State v. Jaffe, 220 N.J. 114, 122 (2014). Further, defendant argues that several mitigating factors were not

---

[1] The record reflects mitigating factor 8 was found at the sentence proceeding; however, that finding does not appear in the judgment of conviction.

afforded sufficient weight: factor 8 (circumstances unlikely to recur) was given "very light weight" because the court "cannot read the future," and mitigating factors 3, 4, and 5 were afforded "strong weight" with the explanation that defendant was "casually" sifting through the car in "no apparent distress [and] no apparent urgency." Defendant argues this finding by the court contradicts the jury's verdict that defendant did not commit murder, but rather acted under a strong provocation and did not have adequate time to cool off.

Defendant's presentence report indicated she had been arrested 23 times as an adult and had admitted to past use of marijuana and PCP. Although the trial court did not explicitly find defendant's arrests constituted proof of guilt, referencing arrests that did not result in conviction approaches an improper basis for finding a risk of re-offense. State v. Tirone, 64 N.J. 222, 229 (1974) (finding a judge may consider prior arrests not resulting in convictions but may not infer defendant's guilt from those charges). Also, Jaffe instructs that in imposing a sentence, the trial court should avoid generalized observations such as the trial court made here, that "there's always the risk of another offense." 220 N.J. at 122.

Beyond these observations, we find no error in the court's findings regarding aggravating and mitigating factors. Because we have reversed

24

defendant's convictions for manslaughter and the weapons offenses, this matter must be returned for the judgment of conviction to be amended to reflect the sentencing court finding for mitigating factor 8, and for resentencing pursuant to State v. Randolph, 210 N.J. 330 (2012) (holding the trial court is required to consider evidence of defendant's rehabilitative efforts between initial sentencing and resentencing).

III.

In sum, we reverse defendant's conviction for passion/provocation manslaughter and convictions for both counts of unlawful possession of a weapon and both counts of possession of a weapon for an unlawful purpose. We affirm defendant's convictions for all remaining offenses and remand for resentencing consistent with this opinion.

Also, we recommend that the Model Criminal Jury Charge Committee consider creating a jury verdict sheet template consistent with our case law for use in all cases where self-defense is a consideration for more than one category of homicide.

Reversed in part, affirmed in part, and remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0431-23